# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT S. GARNER, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>GLOBAL PLASMA SOLUTIONS INC.,<br><br>      Defendant. | C.A. No. 21-665-CFC |

## <u>DEFENDANT GLOBAL PLASMA SOLUTIONS INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT</u>

OF COUNSEL

MCGUIREWOODS LLP

Robert A. Muckenfuss (NC Bar No. 28218) *Pro Hac Application Forthcoming*
Fifth Third Center
201 North Tryon Street
Suite 3000
Charlotte, North Carolina 28202
(704) 343-2052
rmuckenfuss@mcguirewoods.com

R. Trent Taylor (VSB No. 47468) *Pro Hac Application Forthcoming*
(804) 775-1182
rtaylor@mcguirewoods.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
Beth A. Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6642
apoff@ycst.com
bswadley@ycst.com

*Counsel for Global Plasma Solutions Inc.*

S. Virginia Bondurant (VSB No.
76516) *Pro Hac Application
Forthcoming*
(804) 775-1414
vbondurantprice@mcguirewoods.com
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219

Dated:  May 24, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iiii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

NATURE AND STAGE OF PROCEEDING ...................................................... 2

FACTUAL BACKGROUND ............................................................................. 3

LEGAL STANDARD ....................................................................................... 4

CHOICE OF LAW ........................................................................................... 4

ARGUMENT ................................................................................................... 5

I.  The GPS Statements Identified in the Complaint Are Either Not Deceptive As a Matter of Law Or Are Non-Actionable Puffery ................. 5

    A.  The GPS statements are not deceptive as a matter of law ................. 5

    B.  Most of the GPS statements identified in the Complaint are non-actionable puffery ...................................................................... 10

II.  Plaintiff Has Not Alleged An Actionable Injury ......................................... 12

    A.  Plaintiff fails to allege any injury to himself personally ................. 112

    B.  Plaintiff has no allegations of injury (or defect) for GPS's six other NPBI products ......................................................................... 13

III.  Plaintiff Has Not Alleged Any Fraudulent Conduct with the Specificity Required by Rule 9(b) ............................................................ 14

IV.  Each of Plaintiff's Causes of Action Fails to State a Claim ........................ 15

    A.  Plaintiff has failed to state a claim for deceit and fraudulent concealment. ..................................................................................... 15

    B.  Plaintiff's warranty claims all fail for failure to provide pre-suit notice. ............................................................................................... 16

    C.  Plaintiff's breach of express warranty claim fails. ........................... 17

    D.  Plaintiff's breach of implied warranties fail. ................................... 17

    E.  Plaintiff cannot proceed on his MMWA claim. ............................... 18

    F.  Plaintiff does not state a claim for violation of the MCPA ............... 19

    G.  Plaintiff's unjust enrichment claim fails. ........................................ 200

V.   Plaintiff Lacks Standing to Pursue Certain Claims. ....................................211

    A.   Plaintiff lacks standing to pursue claims on behalf of the Multi-State Class ...........................................................................................211

    B.   Plaintiff's injunctive relief claim must fail. ....................................222

CONCLUSION ..................................................................................................222

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airborne Health, Inc. v. Squid Soap, LP*,
   2010 WL 2836391 (Del. Ch. July 20, 2020) .................................................10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................4

*Azoilai v. BMW of N. Am. LLC*,
   2017 WL 1354781 (N.D. Cal. Apr. 13, 2017)..................................................12

*Baney Corp. v. Agilysys NV, LLC*,
   773 F. Supp. 2d 593 (D. Md. 2011)..................................................................10

*United States ex rel. Bookwalter v. UPMC*,
   946 F.3d 162 (3d Cir. 2019) .............................................................................15

*Buetow v. A.L.S. Enters.*,
   650 F.3d 1178 (8th Cir. 2011) ..........................................................................11

*Castrol Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993) ...............................................................................5

*Chambliss v. CareFirst, Inc.*,
   189 F. Supp. 3d. 564 (D. Md. 2016)..................................................................12

*Collins v. Mary Kay, Inc.*,
   874 F.3d 176 (3d Cir. 2017) ...............................................................................4

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ............................................................................11

*Cooper v. Samsung Elecs. Am., Inc.*,
   374 F. App'x 250 (3d Cir. 2010) ......................................................................18

*Crystal v. Midatlantic Cardiovascular Assocs., P.A.*,
   133 A.3d 1198 (Md. Ct. Spec. App. 2016)......................................................15

*Deuley v. DynCorp Int'l, Inc.*,
  8 A.3d 1156 (Del. 2010) ....................................................................4

*Di Ienno v. Libbey Glass Div., Owens-Ill., Inc.*,
  668 F. Supp. 373 (D. Del. 1987)........................................................18

*Earthcam, Inc. v. Oxblue Corp.*,
  2012 WL 12836518 (N.D. Ga. Mar. 26, 2012) ................................11

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ...............................................................5

*Fusco v. Uber Technologies, Inc.*,
  2018 WL 3618232 (E.D. Pa. July 27, 2018) ...............................11, 12

*Gen. Tel. Co. of S.W. v. Falcon*,
  457 U.S. 147 (1982)...........................................................................21

*Green v. Wells Fargo Bank, N.A.*,
  927 F. Supp. 2d 244 (D. Md. 2013)...................................................19

*Gunzl v. CJ Pony Parts*,
  2008 WL 755272 (Del. Super Ct. Mar. 20, 2008)............................17

*Hauck v. Advanced Micro Devices, Inc.*,
  2018 WL 5729234 (N.D. Cal. Oct. 29, 2018) ...................................11

*Henne v. Balick*,
  146 A.2d 394 (Del. 1958) ..................................................................12

*Hibdon v. Safeguard Props., LLC*,
  2015 WL 4249525 (D. Md. July 9, 2015) .........................................20

*Hill v. Brush Engineered Materials, Inc.*,
  383 F. Supp. 2d 814 (D. Md. 2005)...................................................16

*Hoey v. Insmed Inc.*,
  2018 WL 902266 (D.N.J. Feb. 15, 2018) ............................................9

*In re Johnson & Johnson Talcum Powder Prod. Mktg. Sales Practices*
  *& Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018) ..............................................................22

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
 299 F.3d 1242 (11th Cir. 2002) ...........................................................9

*Kirchner v. Wyndham Vacation Resorts, Inc.*,
 2021 WL 1198314 (D. Del. March 30, 2021) ...................................14

*Kurin, Inc. v. Magnolia Medical Technologies, Inc.*,
 473 F. Supp. 3d 1117 (S.D. Cal. July 20, 2020)...........................8, 11

*Kuroda v. SPJS Holdings, LLC*,
 971 A.2d 872 (Del. Ch. 2009) ............................................................20

*Lewis v. Casey*,
 518 U.S. 343 (1996)............................................................................13

*Lieberson v. Johnson & Johnson Consumer Cos.*,
 865 F. Supp. 2d 529 (D.N.J. 2011) ....................................................14

*Lisowski & Garner v. Henry Thayer Company*, Inc.,
 Civil Action No. 2:19-cv-1339-MJH (W.D. Pa.) ...............................1

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
 306 F. Supp. 3d 629 (S.D.N.Y. 2018) ...............................................10

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)............................................................................13

*MetCap Secs. LLC v. Pearl Senior Care, Inc.*,
 2007 WL 1498989 (Del. Ch. Mary 16, 2007) ...................................20

*Milkton v. French*,
 150 A. 28 (Md. 1932) .........................................................................12

*Motor City Bagel, L.L.C. v. Am. Bagel Co.*,
 50 F. Supp. 2d 460 (D. Md. 1999).....................................................16

*My Nat'l Tax & Ins. Serves, Inc. v. H&R Block Tax Servs., Inc.*,
 839 F. Supp. 2d 816 (D. Md. 2012)....................................................15

*Newcal Indus., Inc. v. Ikon Office Solution*,
 513 F.3d 1038 (9th Cir. 2008) ...........................................................10

*Nicolet, Inc. v. Nutt*,
   525 A.2d 146 (Del. 1987) ................................................................15

*Nielson Bus. Equip. Ctr., Inc. v. Monteleone*,
   524 A.2d 1172 (Del. 1987) ..............................................................17

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
   998 F.2d 1192 (3d Cir. 1993) .............................................................3

*Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*,
   702 F. Supp. 2d 238 (D. Del. 2010).....................................................5

*Porras v. StubHub, Inc.*,
   2012 WL 3835073 (N.D. Cal. Sept. 4, 2012) ...................................10

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   632 F. Supp. 2d 362 (D. Del. 2009)...................................................10

*Semeran v. Blackberry Corp.*,
   2016 WL 3647966 (D.N.J. July 6, 2016) ....................................21, 22

*Spine Care Del., LLC v. State Farm Mut. Auto Ins. Co.*,
   2018 1462226 (D. Del. Mar. 23, 2018) .............................................13

*Travelers Indem. Co. v. Lake*,
   594 A.2d 38 (Del. 1991) .....................................................................4

*Trident Atlanta, LLC v. Charlie Graingers Franchising, LLC*,
   2020 WL 6889208 (E.D.N.C. Nov. 23, 2020)...................................12

*Waters v. Electrolux Home Products, Inc.*,
   154 F. Supp. 3d 340 (N.D. W. Va. 2015)..........................................12

**Statutes**

15 U.S.C. § 2301 ......................................................................................18

15 U.S.C. § 2310(d)(3)..............................................................................19

Md. Code, § 13-101(d)..............................................................................19

Md. Comm. Code § 2-607(3)(a) .........................................................16, 17

Md. Comm. Code § 2-607 cmt. 4 ..............................................................17

**Other Authorities**

Fed. R. Civ. P. 8(a), 9(b), and 12(b)(1), (6) ................................................................ 1

Fed. R. Civ. P. 12(b)(1), (6) ........................................................................................ 4

Rule 9(b) ................................................................................................. 2, 14, 15

Rule 12 ...................................................................................................................... 4

Defendant Global Plasma Solutions Inc. ("GPS"), pursuant to Fed. R. Civ. P. 8(a), 9(b), and 12(b)(1), (6), submits this Opening Brief in Support of its Motion to Dismiss, and states as follows:

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This lawsuit is nothing more than a professional plaintiff's attempt to distort the facts and assert baseless claims, doing grave damage to GPS's business in the process. Plaintiff's Complaint throws the proverbial kitchen sink at GPS in the hopes that something might stick. Spanning 107 pages, it is heavy on breathless news articles with vague quotes from supposed experts who speak only generally about air ionization technology. But it is devoid of any concrete, specific allegations plausibly alleging that GPS made even a single false or deceptive statement about its products. Moreover, Plaintiff as a budding professional plaintiff has a history of filing a similar class action with Plaintiff's counsel after buying a product.[1]

Even Plaintiff's supposed ace-in-the-hole fizzles—the few studies that Plaintiff relies on are either "inconclusive" or flat-out state that they cannot determine the source of any additional hydrocarbons. They certainly fall far short of the studies commissioned by GPS that specifically measured whether GPS's devices were effective against SARS-CoV-2 and that conclusively substantiated

---

[1] *See Lisowski & Garner v. Henry Thayer Company, Inc.*, Civil Action No. 2:19-cv-1339-MJH (W.D. Pa.).

GPS's statements. Plaintiff completely discounts *these* studies simply because GPS commissioned them, but he fails to explain why they are false. Simply put, Plaintiff's allegations do not come close to alleging that any GPS statements are false or deceptive. And if Plaintiff is unable to sufficiently allege any deception after 107 pages, then there is no deception to be found.

Plaintiff's allegations suffer from multiple fatal flaws. First, the GPS statements identified are not deceptive as a matter of law. Second, Plaintiff has not alleged an actionable injury. Third, Plaintiff has not alleged any fraudulent conduct with the specificity required by Rule 9(b). Fourth, each of Plaintiff's causes of actions fails to state a claim for additional reasons. For the reasons below, this Court should dismiss Plaintiff's Complaint.

## NATURE AND STAGE OF PROCEEDING

Plaintiff, a resident of Maryland, claims to have purchased a GPS-FC48-AC Compact Auto-Cleaning Ionization System in March 2021 from an entity not affiliated with, or authorized by, GPS—Ecozapp.

On May 4, 2021, he made a "Regulatory Question" submission to GPS through its website, described in Section IV.B. Three days later, on May 7, 2021, he filed this Complaint, which alleges eight causes of action (D.I. 1 page ii.) and seeks to certify national, multi-state, and Maryland classes.

## FACTUAL BACKGROUND

GPS manufactures and distributes needlepoint bipolar ionization ("NPBI") products that help improve indoor air by reducing airborne particulates, odors, and pathogens. Ex. A at 2. Its technology is safe and effective. Unlike Plaintiff's purchase here, GPS sells through authorized distributors (who are not allowed to sell through the internet) rather than directly to customers. GPS's website contains comprehensive information about its seven commercial products and their applications.[2] Ex. B. The products listed are commercial in nature, including "School & Universities," "Office Buildings," and "Health Care." *Id*. at 8.

Moreover, GPS has commissioned efficacy tests of its products with independent laboratories. Ex. C, E-G. GPS is transparent about these tests, posting the results on its website for anyone to access. Ex. D-G. These test results clearly indicate that GPS commissioned the tests. *Id*.

Plaintiff makes much of one early GPS-commissioned test that allegedly used "a chamber the size of a shoebox." (D.I. 1 ¶ 133.) But as is apparent from GPS's website, GPS has performed other tests more recently in much larger venues. In subsequent tests beginning in July 2020 and as recently as April 2021, the test

---

[2] Plaintiff cites to numerous sources in his Complaint, including GPS's website. Thus, GPS can rely on these sources, including anything on GPS's website, in its motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). GPS attaches these sources as exhibits for the Court's convenience.

chamber was 20 feet wide by 8 feet tall by 8 feet deep.  Ex. E at 4.  And the results

from that test were fully consistent with prior test results.

In addition, the GPS website contains a number of prominent disclaimers

about the test results, explained below in Section I.A.

## LEGAL STANDARD

Rule 12 requires dismissal when a complaint fails to state a claim upon which

relief can be granted.  Fed. R. Civ. P. 12(b)(1), (6).  To avoid dismissal, a complaint

must "contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This Court

need not accept legal conclusions, nor speculative assumptions. *Id.*

## CHOICE OF LAW

In diversity cases, the court applies the choice-of-law rules of the forum

state—Delaware.  *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017).

Under Delaware's choice-of-law approach, it must first be determined that there is

an actual conflict between state laws.  *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156,

1161 (Del. 2010).  If there is no actual conflict, "the Court should avoid the choice-

of-law analysis altogether." *Id.*  But if a conflict exists, the Court applies the "most

significant relationship" test in the Restatement (Second) of Conflict of Laws.

*Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991).

Here, the state with the most significant relationship is likely Maryland, but no true conflict between Maryland and Delaware law is apparent at this point as to the causes of action.

## ARGUMENT

## I. The GPS Statements Identified in the Complaint Are Either Not Deceptive As a Matter of Law Or Are Non-Actionable Puffery

### A. The GPS statements are not deceptive as a matter of law

"A court is permitted to find, as a matter of law, that no reasonable consumer could be misled by the challenged advertising." *Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*, 702 F. Supp. 2d 238, 251 n.19 (D. Del. 2010). When doing so, "a court must analyze the message conveyed in full context." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993). To avoid dismissal, the complaint must contain specific, plausible allegations as to the alleged misrepresentations' falsity. *Frederico v. Home Depot*, 507 F.3d 188, 200-01 (3d Cir. 2007).

Here, the Complaint does not plausibly assert that any of the eight categories of GPS's statements listed in the Complaint are false or are otherwise deceptive.

"**Superior technology**": The citations Plaintiff presents as to these statements do not show that GPS's statements are false. Plaintiff complains about GPS's chart on pages 18-19 of the Complaint, but never articulates what is false or deceptive about them, other than the "no harmful byproducts" statements that are addressed below.

5

"**Eliminates VOCs**": None of the statements in the Complaint refer to "eliminating" VOCS; they use the word "destroys," which is not synonymous with complete elimination. And even Plaintiff concedes that the *Building and Environment* (*B&E*) study "led to a decrease in some hydrocarbons"—i.e. "destruction" of VOCs. (D.I. 1 ¶ 80.) Also, Plaintiff has not sufficiently alleged any facts showing that these statements are false or deceptive.

"**No harmful byproducts**": First, GPS's statements refer to "harmful byproducts" without specifying the meaning of "harmful" or "byproducts." Plaintiff first quotes the *B&E* study that said that its tests "***suggested*** that the use of the tested bipolar ionization unit led to a decrease in some hydrocarbons . . . but an increase in others . . . ." (D.I. 1 ¶ 80 (emphasis added).) The study uses the word "suggested" rather than a stronger word like "established." Its authors explained why:

> These compounds may be generated in the space by ion-initiated chemistry, although they are also emitted from humans and other indoor sources such as hand sanitizers and other alcohol-based products. ***We are unable to discern the relative contribution of the ionizer-initiated chemistry vs. indoor sources to the observed elevated indoor contributions in this field study***.

Ex. H at 11 (emphasis added). This is a substantial caveat to the study's conclusion. Such an equivocal statement hardly establishes that GPS's statements as to "harmful byproducts" are false or deceptive.

Second, Plaintiff attempts to allege that the hydrocarbons identified in the *B&E* study as increasing are toxic and can cause health problems by citing to various

sources.  (D.I. 1 ¶¶ 83-87.)  But what Plaintiff fails to allege is that, even ignoring the study's caveat as to the hydrocarbons' source, there is no plausible allegation that the levels of these hydrocarbons produced are harmful; the study certainly does not say they are.

Plaintiff ignores the fact that the study "suggested" that only minute traces of the hydrocarbons were formed.  For instance, the study indicated that 5.1[3] ug/m3 of toluene was present, which is the equivalent of 0.00135 parts per million.[4]  The source cited in footnote 94 of the Complaint indicates that the OSHA permissible exposure limit for toluene is 200 parts per million averaged over an 8-hour workshift.  Thus, the levels of the toluene identified in the study are approximately *148,148 times lower than the OSHA limit*.  Plaintiff has made no plausible allegation that any of the hydrocarbons identified in the study were produced at levels that could be considered harmful.

"**Safe to use**":  First, GPS's products have been proven safe.  Moreover, for the same reasons as above for "no harmful byproducts," Plaintiff has not alleged how GPS products are unsafe.

---

[3] Notably, this includes the pre-existing background level as well.

[4] This number is calculated according to the formula for converting ug/m3 into ppb, and then converting ppb to ppm, assuming a molecular weight of toluene of 92.1 (as stated in fn. 94 in the Complaint).  *See* https://cfpub.epa.gov/ncer_abstracts/index.cfm/fuseaction/display.files/fileid/14285.

"**<u>Cleaner air</u>**": Plaintiff has not plausibly alleged that these statements are false or otherwise deceptive.  Indeed, the *B&E* study relied on by Plaintiff actually supports GPS's statement:  "summed TOC [total organic compounds] values . . . were *lower* during the ionizer on period than the ionizer off period . . . ." Ex. H at 8 (emphasis added).

"**<u>Independent testing</u>**":  Plaintiff does not allege that GPS actually performed the tests at issue.  They were performed by third-party, certified labs that conducts testing consistent with applicable standards, and these labs are neither owned nor affiliated with GPS.  Also, GPS posts test results on its website, and those results made clear that it had commissioned the studies at issue.  Ex. E, F at 2, G at 5.

"**<u>Statements regarding pandemic and GPS products achieving benchmarks</u>**": First, many of the sources Plaintiff uses to attack GPS's statements about its testing do not even refer to GPS products; they only refer generally to air ionization technology. (*See, e.g.*, D.I. 1 ¶¶ 74, 112-113, 116-117, 122-123, 127, 129-130.)  These do not cast doubt on GPS's statements.

Second, Plaintiff complains that these test results "are not applicable to real world conditions."  (D.I. 1 ¶ 119, 129.)  But courts have rejected arguments that a defendant's use of controlled study results is false because they do not reflect "real world" testing.  *Kurin, Inc. v. Magnolia Medical Technologies, Inc.*, 473 F. Supp. 3d 1117, 1137 (S.D. Cal. July 20, 2020).  Simply alleging that a study's design is

imperfect does not render a study false or even deceptive. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1249 (11th Cir. 2002) (holding that "[t]he fact that a study's design is imperfect, however, does not render 1-800's advertisements false"); *cf. Hoey v. Insmed Inc.*, 2018 WL 902266, at *9-10 (D.N.J. Feb. 15, 2018). Accordingly, Plaintiff's allegations fail as to these statements.

Third, Plaintiff claims that "[i]n other words, in a real world application, ionization is not effective against COVID-19 transmission" and that GPS's statements are false. (D.I. 1 ¶ 12.) But Plaintiff has set forth nothing to support this allegation. The Boeing study did not even test SARS-CoV-2, nor does Boeing state that it even tested a GPS device. Nor did the Trane study test SARS-CoV-2. Moreover, both the Boeing and Trane studies were "inconclusive." Ex. I at 22, J. at 8. The Trane study noted that "[n]umerous potential factors could explain the different outcomes" including "experimental setup." Ex. J at 7. And the *B&E* study did not even test microbial inactivation. The only testing that studied the actual SARS-CoV-2 virus showed that GPS's product was in fact effective. Ex. E.

Fourth, GPS includes several prominent disclaimers on its website, noting that GPS "uses multiple data points to formulate performance validation statements" and that "[s]ince locations will vary, clients should evaluate their individual application and environmental conditions when making an assessment regarding the technology's potential benefits." Ex. A at 12, B-E, G. These disclaimers on GPS's

website make it unreasonable for any consumers to believe that the efficacy demonstrated in GPS studies will necessarily be the same for their particular application. Accordingly, these claims should be dismissed. *See, e.g.*, *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (dismissing deceptive trade practices act claim due to presence of disclaimer); *Porras v. StubHub, Inc.*, 2012 WL 3835073, at *5-6 (N.D. Cal. Sept. 4, 2012) (accord).

## B. Most of the GPS statements identified in the Complaint are non-actionable puffery

"Puffery" is defined as vague generalities and statements of opinion. *Baney Corp. v. Agilysys NV, LLC*, 773 F. Supp. 2d 593, 608 (D. Md. 2011); *Airborne Health, Inc. v. Squid Soap, LP*, 2010 WL 2836391, at *8 (Del. Ch. July 20, 2020). Puffery is non-actionable and cannot be deceptive to consumers precisely because it is so general and vague. *See, e.g.*, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 367-68 (D. Del. 2009). "[W]hether an alleged misrepresentation is a statement of fact or is instead mere puffery is a legal question." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Plaintiff targets eight separate categories of statements made by GPS, and five of those categories, identified below, are puffery. (D.I. 1 ¶ 53.)

First, all statements in these categories are generalized and vague claims. For instance, one court found that words such as "safe" are general terms of quality, not

specific characteristics, and are not falsifiable, in part because "the level at which [something] becomes 'unsafe' is subjective." *Fusco v. Uber Technologies, Inc.*, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018). The same is true with words such as "clean, ""cleaner," "eliminates," "destroys," and "independent" as well as terms such as "effective," "simple to install," "low total cost," and others included on the charts in Paragraph 55 in the Complaint.

Second, there is abundant authority supporting that these five categories of claims are puffery:

"**Superior technology**": "Advertising which merely states in general terms that one product is superior is not actionable." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990); *Earthcam, Inc. v. Oxblue Corp.*, 2012 WL 12836518, at *4-7 (N.D. Ga. Mar. 26, 2012); *Hauck v. Advanced Micro Devices, Inc.*, 2018 WL 5729234, at *8 (N.D. Cal. Oct. 29, 2018) (finding that "best technology" was puffery); *Airborne Health, Inc.*, 2010 WL 2836391, at *8 (accord).

"**Eliminates VOCs**": *Kurin, Inc.*, 473 F. Supp. 3d at 1137 (holding that statement that product "eliminates" blood culture commination is puffery because "[i]t is an exaggerated general statement"); *Buetow v. A.L.S. Enters.*, 650 F.3d 1178, 1186 (8th Cir. 2011) (accord).

"**Safe to use**": *Fusco*, 2018 WL 3618232, at *6; *Azoilai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *7-8 (N.D. Cal. Apr. 13, 2017) (holding that generalized assertions about a product's safety are puffery); *Milkton v. French*, 150 A. 28, 32 (Md. 1932) (accord).

"**Cleaner air**": *Trident Atlanta, LLC v. Charlie Graingers Franchising, LLC*, 2020 WL 6889208, at *7 (E.D.N.C. Nov. 23, 2020) (holding statement that defendant had the "cleanest restaurants in America" to be nonactionable puffery); *Waters v. Electrolux Home Products, Inc.*, 154 F. Supp. 3d 340, 348-49 (N.D. W. Va. 2015) (accord).

Thus, these claims should be dismissed.

## II.    Plaintiff Has Not Alleged An Actionable Injury

### A.    Plaintiff fails to allege any injury to himself personally

There is no allegation that Plaintiff suffered or will suffer negative health effects. Fear of future *potential* negative health effects is too speculative to state a claim for injury. *See, e.g.*, *Chambliss v. CareFirst, Inc.*, 189 F. Supp. 3d. 564, 570 (D. Md. 2016); *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1958).

Plaintiff also claims he would not have purchased the allegedly defective device had he known of the purported defects. (D.I. 1 ¶ 170.) But he does not actually allege that his specific device does not conform to GPS's statements. Plaintiff only states that he has not "notice[d] any improvements in the air quality

and [has] continued to endure the presence of airborne irritants." (D.I. 1 ¶ 168.)
However, this is not plausible. An individual would not be able to determine
whether air quality has improved, including a reduction in airborne irritants, simply
by one's senses. Plaintiff has failed to state a "concrete injury" related to the subject
product. *See Spine Care Del., LLC v. State Farm Mut. Auto Ins. Co.*, 2018 1462226,
at *1 (D. Del. Mar. 23, 2018).[5]

## B. Plaintiff has no allegations of injury (or defect) for GPS's six other NPBI products

Here, Plaintiff alleges only to have purchased a GPS device from a third-party.
(D.I. 1 ⁋ 162.) Indeed, Plaintiff makes *no* allegations regarding either injury or
damage related to GPS's six other NPBI products. Yet he seeks to represent a class
of individuals who have purchased these other GPS products. (D.I. 1 ¶¶ 2 & n.1,
172.)

A plaintiff "must allege and show that [he] personally ha[s] been injured, not
that injury has been suffered by other, unidentified members of the class to which
[he] belong[s] and which [he] purport[s] to represent." *Lewis v. Casey*, 518 U.S.
343, 357 (1996). For this reason, a plaintiff cannot have suffered any injury-in-fact

---

[5] The absence of any cognizable injury also raises a question as to whether Plaintiff
has standing to assert a claim. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S.
555, 560-61 (1992).

from a product which he did not purchase. *E.g.*, *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011).

Because Plaintiff only purchased one product, claims related to others should be dismissed.

### III. Plaintiff Has Not Alleged Any Fraudulent Conduct with the Specificity Required by Rule 9(b)

All of Plaintiff's claims sound in fraud since they are based on alleged misrepresentations and deceit. Rule 9(b) requires a plaintiff to plead allegations of fraud with specificity and allege with particularity "the date, time and place of the alleged fraud or otherwise inject[] precision or some measure of substantiation into a fraud allegation." *Kirchner v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1198314, at *3 (D. Del. March 30, 2021).

In *Kirchner*, this Court dismissed a class action when plaintiffs did not plead "the specific dates and locations of the alleged fraud and the identities of the individuals who perpetrated the alleged fraud." 2021 WL 1198314, at *4. Similarly, here, Plaintiff generically states in Paragraphs 18 and 165 of the Complaint that he "relied on" alleged misrepresentations and that he "observed and read Defendant's representations" without identifying the "who, when, where, and what" of those statements. This Court, as in *Kirchner*, should hold Plaintiff failed to plead this case with the required particularity of Rule 9(b).

Additionally, Plaintiff has failed to meet the particularity requirement of Rule 9(b) regarding "how" GPS's statements are allegedly deceptive or fraudulent. *See United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019). He attempts to do so by relying on "studies" and "news reports." *See* Section I.A. But these do not establish that GPS's statements are untrue or deceptive, as explained in Section I.A.

## IV. Each of Plaintiff's Causes of Action Fails to State a Claim

### A. Plaintiff has failed to state a claim for deceit and fraudulent concealment.

To pursue a fraudulent concealment claim, a plaintiff must plead (1) duty, (2) failure to disclose, (3) intent to deceive, (4) justifiable reliance, and (5) damages as a result. *Crystal v. Midatlantic Cardiovascular Assocs., P.A.*, 133 A.3d 1198, 1209 (Md. Ct. Spec. App. 2016); *see also Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987) (accord). Plaintiff has failed to plead several of these elements.

First, Plaintiff does not plead that GPS owed him any duty. Nor can he. Actionable fraudulent concealment generally requires the existence of a fiduciary relationship. *My Nat'l Tax & Ins. Serves, Inc. v. H&R Block Tax Servs., Inc.*, 839 F. Supp. 2d 816, 820 (D. Md. 2012); *Nicolet, Inc.*, 525 A.2d at 149. Here, GPS is a remote manufacturer, and Plaintiff purchased GPS's product through an unaffiliated third party. That is the antithesis of a fiduciary relationship.

Second, Plaintiff fails to plead reliance with any specificity. Despite alleging a litany of statements, Plaintiff's allegations as to what he relied upon is suspiciously thin. Instead, he only pleads that he generally saw GPS's statements. (D.I. 1 ¶ 165.) This is insufficient. *See, e.g.*, *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 823 (D. Md. 2005).

Third, he has not plausibly pleaded that any reliance was justifiable. GPS's website is replete with disclaimers, as explained in Section I.A. This precludes any claim of justifiable reliance. *See, e.g.*, *Motor City Bagel, L.L.C. v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 474 (D. Md. 1999).

## B. Plaintiff's warranty claims all fail for failure to provide pre-suit notice.

Each of Plaintiff's warranty claims requires the provision of pre-suit notice. *See* Md. Comm. Code § 2-607(3)(a).

Plaintiff alleges generally that he did provide pre-suit notice, but his allegations lack details. The only record that GPS has of any potential contact with Plaintiff is a "Regulatory Question" submission. Ex. K. Plaintiff lodged this through GPS's website on May 4, 2021. He admits that he purchased and installed the product for his parents and that he saw a CNN news story about the claims. (*Id.* at 2.) It says nothing about a lawsuit, any refund, or otherwise identifying any potential warranty breach.

This is insufficient. The pre-suit notice must "inform[] the seller that the transaction is claimed to involve a breach." Md. Comm. Code § 2-607 cmt. 4; *see also* Del. Code ti. 6 § 2-607(3)(a).

### C.    Plaintiff's breach of express warranty claim fails.

An essential element of any express warranty claim is privity of contract. *Gunzl v. CJ Pony Parts*, 2008 WL 755272, at *2 (Del. Super Ct. Mar. 20, 2008). Here, Plaintiff has not—and cannot—plead privity.

As Plaintiff concedes, he purchased a single product from a third-party— Ecozapp. (D.I. 1 ¶ 162.) He did not purchase this product from GPS or even a GPS distributor. Thus, his express warranty claims fail.

### D.    Plaintiff's breach of implied warranties fail.

To be merchantable, a product must be fit for its usual or ordinary purpose. *Nielson Bus. Equip. Ctr., Inc. v. Monteleone*, 524 A.2d 1172, 1175 (Del. 1987). This requires allegations supporting an inference that the product supplied was defective. *See id.* Here, Plaintiff has not done so.

Plaintiff has not plausibly pled any defect in his product. *See* Section II.A. He claims that "airborne irritants" still affect him at his parent's home, but he does not specify the "airborne irritants," how they affect him, or how he even knows they exist. (D.I. 1 ¶ 168.) This is too general and requires dismissal.

To proceed on an implied warranty for fitness for a particular purpose claim, a plaintiff must allege a particular purpose that is distinct from the product's ordinary purpose. *See Di Ienno v. Libbey Glass Div., Owens-Ill., Inc.,* 668 F. Supp. 373, 376-77 (D. Del. 1987). Here, Plaintiff alleges that the particular purpose for which he purchased the Product was to "eliminate COVID-19 and remove VOCs and other toxic substances from the air." (D.I. 1 ¶ 243.) But Plaintiff also alleges that "the ordinary purpose" of the Products is "to safely cleanse the air of VOCs and the COVID-19 virus." (D.I. 1 ¶ 211.) Thus, any particular purpose is indistinguishable from the ordinary purpose, requiring dismissal.

### E.    Plaintiff cannot proceed on his MMWA claim.

By definition, the MMWA applies only to consumer goods that are "normally used for personal, family, or household purposes." 15 U.S.C. § 2301. Plaintiff alleges that he bought the product online. But GPS's website lists only commercial products on its website, and Plaintiff does not plead otherwise. *See* Factual Background. Thus, Plaintiff's purchase does not even fall within the MMWA's ambit, requiring dismissal.

Even if the MMWA could apply, the claim is derivative of the state-law warranty claims. Because those state-law claims fail, so too does the MMWA claim. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).

Also, the class claims for any breach of the MMWA claim should be dismissed. The statute is explicit: no MMWA claim may be brought as a class action when the number of *named* plaintiffs is less than one hundred. 15 U.S.C. § 2310(d)(3). Here, there is only a single named plaintiff, requiring dismissal of the class claims.

## F. Plaintiff does not state a claim for violation of the MCPA.

First, an MCPA violation based on representations requires the existence of a "clear and definite promise[]." *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 249 (D. Md. 2013).

As discussed above, many of the statements identified in the Complaint amount to puffery. *See* Section I.B. Moreover, GPS offered numerous disclaimers related to the sale of its products. Indeed, far from clear and definite, GPS told potential customers that "potential benefits" depended on numerous factors. *See* Section I.A.

Second, Plaintiff must plead justifiable reliance. *See Green*, 927 F. Supp. 2d at 249. With all of the disclaimers discussed above, Plaintiff's reliance was not justifiable. *See* Section IV.A.

Third, to have a viable claim under the MCPA, Plaintiff must sufficiently allege that the product at issue is "primarily for personal, household, family, or agricultural purposes." Md. Code, § 13-101(d). Plaintiff fails to provide any support

for his conclusory allegation. (D.I. 1 ¶ 264.) As explained in the Factual Background, GPS's products on its website are sold for commercial applications. Plaintiff's MCPA thus fails.

Fourth, Plaintiff must plausibly allege that GPS's statements are false or otherwise deceptive. He has not done so.[6] *See* Section I.A.

Finally, violation of the MCPA requires the showing of "substantial injury." *Hibdon v. Safeguard Props., LLC*, 2015 WL 4249525, at *4 (D. Md. July 9, 2015). There is no factual basis to conclude the product did not perform as intended. Plaintiff has not suffered ***any*** injury, *see* Section II., much less a substantial one required for an MCPA claim.

### G. Plaintiff's unjust enrichment claim fails.

As an initial matter, the existence of a valid contract extinguishes a claim of unjust enrichment. *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (Del. Ch. 2009). Here, Plaintiff entered into a contract by purchasing GPS's product. Thus, this claim cannot proceed.

Even if the contract did not extinguish the unjust enrichment claim, Plaintiff's failure to confer any benefit on GPS surely does. An essential element of unjust enrichment is that plaintiff confers a benefit on a defendant. *MetCap Secs. LLC v.*

---

[6] This is also a required element for the other state consumer protection statutes identified in Count VI, and because Plaintiff has not met this element, that Count must be dismissed for this reason too.

*Pearl Senior Care, Inc.*, 2007 WL 1498989, at *6 (Del. Ch. Mary 16, 2007). But here, Plaintiff has not done so. He only alleges that he purchased from Ecozapp, an unaffiliated third-party. (D.I. 1 ¶ 162.) He does not allege that GPS received any funds from his purchase from Ecozapp. Accordingly, this claim fails.

## V.    Plaintiff Lacks Standing to Pursue Certain Claims.

### A.    Plaintiff lacks standing to pursue claims on behalf of the Multi-State Class

Plaintiff attempts to bring claims on behalf of a multi-state class of persons. (D.I. 1 ¶¶ 172, 254-59.) This is impermissible.

It is axiomatic that one must be a member of the class which he attempts to represent. *See Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). This includes any proposed multi-state classes. *See Semeran v. Blackberry Corp.*, 2016 WL 3647966, at *6 (D.N.J. July 6, 2016).

Plaintiff is a resident of Maryland. (D.I. 1 ¶ 20.) Plaintiff admittedly is not a resident of the other states. (*See id.*) Thus, he is not a member of any class comprising those states.

In *Semeran*, a plaintiff sought to represent a multi-state class of thirty-one states related to alleged product defects. 2016 WL 3647966, at *6. The court dismissed the multi-state class for lack of standing because he was not a resident of those thirty-one states. *Id.* The court explained that even where a plaintiff "is a part of a multi-state class, courts in this Circuit have held that plaintiff does not have

21

standing to assert claims under the laws of the states in which he does not reside."

*Id.*

So too here.  Count VI must be dismissed.

## B.    Plaintiff's injunctive relief claim must fail.

Plaintiff seeks an injunctive relief as a remedy.  (D.I. 1 ¶ Relief Demanded.) But former customers "who [are] already aware of . . . allegedly deceptive business practices from which they sought future protection" lack standing to pursue injunctive relief regarding the marketing of a product."  *In re Johnson & Johnson Talcum Powder Prod. Mktg. Sales Practices & Liab. Litig.*, 903 F.3d 278, 292-93 (3d Cir. 2018). Plaintiff is already aware of what he alleges are deceptive business practices.  Therefore, he is barred from seeking injunctive relief.

## <u>CONCLUSION</u>

For all of the reasons stated above, GPS respectfully requests that its motion be granted.

Young Conaway Stargatt & Taylor, LLP


/s/    *Adam W. Poff*
Adam W. Poff (No. 3990)
Tammy L. Mercer (No. 4957)
Beth A. Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6642
apoff@ycst.com

tmercer@ycst.com
bswadley@ycst.com
*Of Counsel*

**MCGUIREWOODS LLP**

Robert A. Muckenfuss (NC Bar No. 28218)
*Pro Hac Application Forthcoming*
Fifth Third Center
201 North Tryon Street
Suite 3000
Charlotte, North Carolina  28202
(704) 343-2052
rmuckenfuss@mcguirewoods.com

R. Trent Taylor (VSB No. 47468)
*Pro Hac Application Forthcoming*
(804) 775-1182
rtaylor@mcguirewoods.com
S. Virginia Bondurant (VSB No. 76516)
*Pro Hac Application Forthcoming*
(804) 775-1414
vbondurantprice@mcguirewoods.com
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(804) 775-1061

*Counsel for Global Plasma Solutions Inc*


Dated:  May 24, 2021

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on May 24, 2021, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered participants.

I further certify that on May 24, 2021, I caused the foregoing document to be served by e-mail on the following counsel of record:

>       Robert J. Kriner, Jr.
>       Scott M. Tucker
>       Tiffany Joanne Cramer
>       CHIMICLES SCHWARTZ KRINER
>       & DONALDSON-SMITH LLP
>       2711 Centerville Road
>       Suite 201
>       Wilmington, DE 19808
>       rjk@chimicles.com
>       scotttucker@chimicles.com
>       tjc@chimicles.com
>
>       *Attorneys for Plaintiff*

>               YOUNG CONAWAY STARGATT
>                & TAYLOR, LLP
>
>               /s/ Adam W. Poff
>               Adam W. Poff (No. 3990)
>               Tammy L. Mercer (No. 4957)
>               Beth A. Swadley (No. 6331)
>               Rodney Square
>               1000 North King Street
>               Wilmington, DE 19801
>               (302) 571-6642

*apoff@ycst.com*
*tmercer@ycst.com*
*bswadley@ycst.com*

*Attorneys for Defendant*
*Global Plasma Solutions Inc.*

Dated:     May 24, 2021

25743625.1