### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT S. GARNER, on behalf of himself and all others similarly situated, | ELECTRONICALLY FILED |
| | C.A. NO.  21-665-CFC |
| Plaintiff, | |
| v. | |
| GLOBAL PLASMA SOLUTIONS, INC. | |
| Defendant. | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.   INTRODUCTION                                                           1

II.  ARGUMENT                                                              1

A.   **Plaintiff Has Standing**                                            1
   1. Multistate Class                                                     1
   2. Unpurchased Products                                                 3

B.   **Plaintiff Alleges an Actionable Injury**                            4

C.   **Plaintiff Satisfies Rule 9(b)'s Requirements**                      5

D.   **GPS' Representations Are Deceptive and Not Puffery**                7
   1. Superior Technology                                                  9
   2. Eliminates VOCs                                                      10
   3. No Harmful Byproducts                                                11
   4. Safe to Use                                                          11
   5. Cleaner Air                                                          12
   6. Independent Testing; COVID Pandemic and Benchmarks                   13

E.   **Plaintiff Properly States All Claims**                              16
   1. Deceit and Fraudulent Concealment                                    16
   2. Plaintiff provided pre-suit notice.                                  17
   3. Breach of express warranty does not require privity.                 18
   4. Implied Warranties Are Properly Pled                                 19
   5. MMWA Claim is proper.                                                20
   6. MCPA Violation                                                       21
   7. Unjust Enrichment                                                    22

III. CONCLUSION                                                            23

# TABLE OF AUTHORITIES

<u>Cases</u>

*Air Evac EMS, Inc. v. Cheatham*,

    910 F.3d 751 (4th Cir. 2018) ................................................................................5

*Azoilai v. BMW of N. Am. LLC*,

    2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .......................................................15

*Birdsong v. Apple, Inc.*,

    590 F.3d 955 (9th Cir. 2009) ...............................................................................27

*Bridgestone/Firestone, Inc. v. Cap Gemini Am., Inc.*,

    2002 WL 1042089 (Del. Super. Ct. May 23, 2002) ...................................... 11, 12

Buetow v. A.L.S. Enters.,

    650 F.3d 1178 (8th Cir. 2011). .............................................................................14

*Castrol, Inc. v. Pennzoil Quaker State Co.*,

    169 F. Supp. 2d 332 (D.N.J. 2001) ......................................................................17

*Chapman v. Gen. Motors LLC*,

    2021 WL 1286612 (E.D. Mich. Mar. 31, 2021) ..................................................27

*Cline v. Prowler Indus. of Maryland, Inc.*,

    418 A.2d 968 (Del. 1980) ....................................................................................23

*Cole v. Sunnyside Corp.*,

    610 N.W.2d 511 (Wis. Ct. App. 2000) ................................................................16

*Coleman Dupont Homsey v. Vigilant Ins. Co.*,

   496 F. Supp.2d 433 (D. Del. 2007) ........................................................8

*Cottrell v. Alcon Labs.*,

   874 F.3d 154 (3d. Cir. 2017) .................................................................5

*Debernardis v. IQ Formulations*,

   LLC, 942 F.3d 1076 (11th Cir. 2019) ....................................................5

*Di Ienno v. Libbey Glass Div., Owens-Ill., Inc.*,

   668 F. Supp. 373 (D. Del. 1987). .........................................................25

*Doll v. Ford Motor Co.*,

   814 F. Supp. 2d 526 (D. Md. 2011). ......................................................9

*Dyson v. SharkNinja*,

   2019 WL 1454509 (N.D. Ill. Mar. 31, 2019) .......................................19

*F.T.C. v. QT, Inc.*,

   512 F.3d 858 (7th Cir. 2008) ....................................................... 6, 7, 20

*Firestone Tire & Rubber Co.*,

   81 F.T.C. 398 (1972) ............................................................................16

*Floyd v. Am. Honda Motor Co.*,

   966 F.3d 1027 (9th Cir. 2020). .............................................................27

*FTC v. QT, Inc.*,

   448 F. Supp. 2d 908 (N.D. Ill. 2006) ...................................................14

*Fullerton Aircraft Sales & Rentals, Inc. v. Beech Aircraft Corp.*,

    842 F.2d 717 (4th Cir. 1988). ...............................................................25

*Giant Food, Inc. v. FTC*,

    322 F.2d 977 (D.C. Cir. 1963)...........................................................11

*Gress v. Freedom Mortg. Corp.*,

    386 F. Supp. 3d 455 (M.D. Pa. 2019) ...................................................3

*Hangzhou Silk Imp. & Exp. Corp. v. P.C.B. Int'l Indus., Inc.*,

    48 U.C.C. Rep. Serv. 2d 1367 (S.D.N.Y. 2002) ...................................22

*Hayes v. Hambruch*,

    64 F.3d 657 (4th Cir. 1995) ...............................................................10

*Hibdon v. Safeguard Properties, LLC*,

    2015 WL 4249525(D. Md. July 9, 2015) ............................................28

*In re Aqua Dots Prods. Liab. Litig.*,

    654 F.3d 748 (7th Cir. 2011) ...............................................................6

*In re Asacol Antitrust Litig.*,

    907 F.3d 42 (1st Cir. 2018) .................................................................3

*In re Milo's Dog Treats Consol. Cases*,

    9 F. Supp. 3d 523 (W.D. Pa. 2014) ...................................................12

*Janusz v. Gilliam*,

    947 A.2d 560 (Md. 2008) ..................................................................29

*Johns v. Bayer Corp.,*

    *No.*, 2010 WL 2573493 (S.D. Cal. June 24, 2010) ..............................................10

*Kuns v. Ford Motor Co.,*

    543 Fed. Appx. 572 (6th Cir. 2013) ....................................................................26

*Kurin, Inc. v. Magnolia Medical Technologies, Inc.,*

    473 F. Supp. 3d 1117, (S.D. Cal. 2020) ..............................................................14

*Kwikset Corp. v. Superior Ct.,*

    246 P.3d 877 (Cal. 2011).....................................................................................15

*Langan v. Johnson & Johnson Consumer Cos.,*

    897 F.3d 88(2d Cir. 2018) .....................................................................................2

*Lanners v. Whitney,*

    428 P.2d 398 (Or. 1967) ......................................................................................23

*Lewis v. Mobil Oil Corp.,*

    438 F.2d 500 (8th Cir. 1971) ...............................................................................23

*Lincoln v. Ford Motor Co,*

    No. CV JKB-19-2741, 2020 WL 5820985 (D. Md. Sept. 29, 2020) ....................9

*Lloyd v. Gen. Motors Corp.,*

    916 A.2d 257 (Md. 2007) .............................................................................. 22, 28

*Luskin's, Inc. v. Consumer Prot. Div.,*

    726 A.2d 702 (Md. 1999) .....................................................................................10

*Mayor of Baltimore v. Actelion Pharmaceuticals*,

   995 F.3d 123 (4th Cir. 2021). ...................................................................2

*Morris v. Osmose Wood Preserving*,

   667 A.2d 624 (Md. 1995) ............................................................... 6, 24

*Morrison v. YTB Int'l, Inc.,*

   649 F.3d 533 (7th Cir. 2011) ..................................................................2

*My Nat. Tax & Ins. Servs., Inc. v. H & R Block Tax Servs.*, Inc.,

   839 F. Supp. 2d 816 (D. Md. 2012) .......................................................21

*Odyssey Travel Center, Inc. v. RO Cruises, Inc.*,

   262 F. Supp. 2d 618 (D. Md. 2003) .......................................................21

*Parrish v. Volkswagen Grp. of Am., Inc.,*

   463 F. Supp. 3d 1043 (C.D. Cal. 2020)..................................................15

*Resort Car Rental Sys., Inc. v. FTC*,

   518 F.2d 962 (9th Cir. 1975) ..................................................................11

*Rolland v. Spark Energy, LLC*,

   2019 WL 1903990 (D.N.J. Apr. 29, 2019)...............................................3

*Shaw v. Brown & Williamson Tobacco Corp.*,

   973 F. Supp. 539 (D. Md. 1997).............................................................8

*Sierra Club v. Morton*,

   405 U.S. 727 (1972) ................................................................................5

*Singh v. Lenovo (United States) Inc.*,

    No. CV CCB-20-1082, 2021 WL 37660 (D. Md. Jan. 4, 2021) ................. 4, 9, 21

*State v. Patten*,

    416 N.W.2d 168 (Minn. Ct. App. 1987) ............................................................22

*Stella v. LVMH Perfumes and Cosmetics USA, Inc.*,

    564 F. Supp. 2d 833 (N.D. Ill. 2008)................................................................27

*Sterling Drug, Inc. v. FTC*,

    741 F.2d 1146 (9th Cir. 1984) ..........................................................................13

*Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*,

    190 F. Supp. 2d 785 (D. Md. 2002) ....................................................................8

*T.J. Stevenson & Co. v. 81,193 Bags of Flour*,

    629 F.2d 338 (5th Cir. 1980) ............................................................................22

*Thomas v. Ford Motor Credit Co.*,

    429 A.2d 277 (Md. Ct. Spec. App. 1981). ........................................................26

*Trident Atlanta, LLC v. Charlie Graingers Franchising, LLC*,

    2020 WL 6889208 (E.D.N.C. Nov. 23, 2020) ..................................................17

*Van Buren v. Walmart, Inc.*,

    No. CV DKC 19-0911, 2020 WL 1064823 (D. Md. Mar. 5, 2020)......................4

*Van Zeeland v. Rand McNally*,

    2021 WL 1209155 (N.D. Ill. Mar. 31, 2021) ....................................................27

*Williams v. Potomac Family Dining Group Operating Co.*,

  No. GJH-19-1780, 2019 WL 5309628 (D. Md. Oct. 21, 2019)............................4

Statutes

Md. Code Ann. Com. Law § 13-105 ........................................................7

Md. Code Ann., Com. Law § 2-314 ........................................................18

Md. Code Ann., Com. Law § 2-315 ........................................................20

Md. Code Ann., Com. Law §§ 14-401 ....................................................19

Md. Code Ann., Com. Law §§ 14-407 ....................................................19

Other Authorities

U.C.C. § 2-607 ..............................................................................17

U.C.C. §§ 1-103 .............................................................................20

U.C.C. §§ 1-305 .............................................................................20

UCC §§ 2-315 ...............................................................................20

UCC §§2-607 ................................................................................18

Treatises

W. P. Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS (5th ed.1984)....9

## I.    INTRODUCTION

In 19th century America, peddlers traveled from town to town selling remedies, operating as confidence men, they relied on consumers' trust. Omitting defects and using deceptive claims, these peddlers, sometimes described as snake oil salesmen, took money from buyers relying upon their claims. The salesmen were forced to stay on the run because if they stayed in one place, their trickery would soon be discovered and they would face consequences.

Likewise GPS' brief uses partial truths, deception, and outright lies in an effort to avoid liability.

## II.    ARGUMENT

### A.  Plaintiff Has Standing

Defendant's standing arguments[1] are misplaced because both the multistate class and unpurchased issues are properly addressed at the class certification stage.

### 1. Multistate Class

In stark contrast with the clear trend, GPS claims that Mr. Garner lacks standing to represent  the Multistate Class. In support of this claim, it discusses a single, unpublished district court opinion from a state that is neither Maryland nor Delaware. The Fourth Circuit rejects GPS' argument.

_____

[1] After reviewing the law concerning injunctive relief, Plaintiff is persuaded by GPS' argument and withdraws that request.

1

In *Mayor of Baltimore v. Actelion Pharmaceuticals*, the district court agreed with the argument that GPS espouses. 995 F.3d 123 (4th Cir. 2021). This argument was swiftly rejected by the Fourth Circuit when it vacated the district court's dismissal. *Id.* at 134. The court reasoned that this issue was best addressed at the class certification phase, and it was improper for those claims to "be stricken or disregarded" at this stage. *Id.*

While the Third Circuit has not ruled on this issue, the First, Second, and Seventh agree with the Fourth Circuit's interpretation. *See Morrison v. YTB Int'l, Inc.,* 649 F.3d 533, 536 (7th Cir. 2011) (explaining that whether plaintiff could bring putative class action on behalf of out-of-state class members "ha[d] nothing to do with standing, though it may affect whether a class should be certified…"); *Langan v. Johnson & Johnson Consumer Cos.,* 897 F.3d 88, 93 (2d Cir. 2018) ("[W]hether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)"); *In re Asacol Antitrust Litig.,* 907 F.3d 42, 49–51 (1st Cir. 2018).

Additionally, multiple courts within the Third Circuit have adopted this interpretation. *See Rolland v. Spark Energy, LLC*, 2019 WL 1903990, at *5 (D.N.J. Apr. 29, 2019); *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 462 (M.D. Pa. 2019) ("capacity to state claims under the laws of other states on behalf of

2

putative class members…is a matter to be decided under the rubric of Rule 23, not

constitutional standing under Article III").

### 2. Unpurchased Products

In a similar fashion, GPS confuses additional class certification issues with

those of standing.[2] Courts "allow[] an action to proceed once the named plaintiff

demonstrates [] individual standing to bring a claim, leaving for the Rule 23(a)

analysis questions about commonality, typicality, and adequacy of representation."

*Williams v. Potomac Family Dining Group Operating Co.*, No. GJH-19-1780,

2019 WL 5309628, at *4 (D. Md. Oct. 21, 2019).  When the deception or harm is

not "significantly different," federal courts in Maryland will decline to address this

issue at the Rule 12 stage and instead will wait until class certification. *Singh v.*

*Lenovo (United States) Inc.*, No. CV CCB-20-1082, 2021 WL 37660, at *2 (D.

Md. Jan. 4, 2021); *Van Buren v. Walmart, Inc.*, No. CV DKC 19-0911, 2020 WL

1064823, at *3 (D. Md. Mar. 5, 2020).

Here, Mr. Garner purchased one of GPS' products. Each product uses the

same NPBI technology, suffers the same defects, and represents similar claimed

---

[2] GPS cites *Lieberson* which has been rejected by numerous cases in the District of
New Jersey. *Lieberson* was examined, and ultimately rejected in *Van Buren* when
the defendant attempted to persuade a Maryland federal court to adopt the same
stance as GPS advocates. 2020 WL 1064823, at *3.

benefits. Further, as described further herein, Mr. Garner has suffered injuries traceable to GPS. Therefore, Mr. Garner satisfies Article III's standing requirement.

### B.  Plaintiff Alleges an Actionable Injury

First, Mr. Garner alleges injury through financial injury. This is sufficient. *See Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing ...."); *see also Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (concluding that the plaintiff's alleged financial losses satisfied the injury requirement); *Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d. Cir. 2017) (advising that "where a plaintiff alleges financial harm, standing is often assumed without discussion"); *Debernardis v. IQ Formulations*, LLC, 942 F.3d 1076, 1088 (11th Cir. 2019) (injury found where product later found to be defective deprived plaintiff of the entire benefit of their bargain); *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("A financial injury creates standing").

Fear of future negative health effects is an injury. Maryland has long recognized such claims and analyzes "both the nature of the damage threatened and the probability of damage occurring to determine whether the two, viewed

4

together, exhibit a clear, serious, and unreasonable risk of death or personal injury." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631–32 (Md. 1995). "[I]f the possible injury is extraordinarily severe, i.e., multiple deaths, we do not require the probability of the injury occurring to be as high…" *Id.* Exposure to harmful substances, or getting infected and transmitting COVID-19 to a friend or loved one because you relied on an alleged safety mechanism is extraordinarily severe.

Further, where a proven treatment exists, "selling a placebo as if it had therapeutic effect directly injures the consumer." *F.T.C. v. QT, Inc.*, 512 F.3d 858, 863 (7th Cir. 2008). "Deceit…will lead some consumers to avoid treatments that cost less and do more; the lies will lead others to pay too much for pain relief or otherwise interfere with the matching of remedies to medical conditions." *Id.* This is exactly the scenario at bar. An ineffective at best – and harmful at worst – air treatment system that costs more and distracts dollars from proven air treatment technologies.

### C.   Plaintiff Satisfies Rule 9(b)'s Requirements

Where required, Mr. Garner satisfies Rule 9(b). GPS cites *Kirchner* yet misses a key distinction. *Kirchner* was solely a misrepresentation case with no allegation of fraudulent concealment or omissions. Mr. Garner brings claims based in both

concealment and misrepresentation. He satisfies Rule 9(b) because he identifies that GPS (who) prior to sale (when) in multiple mediums (where; cites location) that the products safely eliminate VOCs and COVID-19. Further, he extensively describes the falsehood (how).

Further, federal courts applying Maryland and Delaware law have adopted a relaxed Rule 9(b) standard "in fraudulent concealment cases where the concealment involves omissions of material fact," because "omissions cannot be described in terms of the time, place, and contents of the misrepresentation." *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997); *See* also *Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F. Supp.2d 433, 439 (D. Del. 2007). The relaxed standard is implemented to offset the difficulties  in pleading omissions and concealment "given that omissions cannot be described in terms of the time, place, and contents of a misrepresentation or the identity of the person making the misrepresentation." *Shaw*, 973 F. Supp. at 552. The more relaxed standard still effectuates the key purpose of Rule 9(b) to "provide the defendant fair notice of the basis of plaintiff's claim." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 798 (D. Md. 2002). The standard only requires a complaint to be both "thorough" and plead "alleged fraudulent behavior with specificity." *Id.* at 799. Where a plaintiff "cite[s] to specific advertisements and marketing materials with the implication that these are some of the many channels through which [defendant] failed to disclose the defect and with the

6

implication that these advertisements…were the reason that the plaintiff[] purchased the product," there is no requirement that he "state which advertisement they relied on, or on what date [he] viewed those advertisements." *Singh*, 2021 WL 37660, at *9. Recent federal cases finding sufficient particularity under the standard include:

- *Singh*: defendant knew of defect (through consumer reports), concealed the defect in all of its advertising (including on its website), and plaintiff would not have purchased the product if they knew of the defect. *Id.*

- *Lincoln v. Ford Motor Co.*: "described the nature of the F-150's steering defect and cited various sources through which Ford should have learned of this defect." No. CV JKB-19-2741, 2020 WL 5820985, at *12 (D. Md. Sept. 29, 2020).

- *Doll v. Ford Motor Co.*: satisfied where defendant was aware of the defect (through investigations and consumer complaints), concealed it, and plaintiff would have taken different actions had he known of defect. 814 F. Supp. 2d 526, 538 (D. Md. 2011).

### D.   GPS' Representations Are Deceptive and Not Puffery

Deception statutes are to "be construed and applied liberally to promote its purpose." Md. Code Ann. Com. Law § 13-105. The presence of a disclaimer is not dispositive at a motion to dismiss because "determining whether a reasonable

7

consumer would be deceived is inappropriate." *Johns v. Bayer Corp., No.*, 2010 WL 2573493, at *4 (S.D. Cal. June 24, 2010). In determining the impact of a disclaimer, a court must dispel the advertisement's impression to consumers and must be seen by the consumer. Even when seen, a disclaimer can still fail to cure a consumer's conclusions. *Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702, 707 (Md. 1999). An omission is material "if a significant number of unsophisticated consumers would attach importance to the information in determining a choice of action." *Hayes v. Hambruch*, 64 F.3d 657 (4th Cir. 1995). Representations capable of being interpreted in a misleading way should be construed against the advertiser. *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975). Further, a statement or omission may convey more than one reasonable meaning, and if of those meanings is deceptive, it is an actionable deception. *Giant Food, Inc. v. FTC*, 322 F.2d 977 (D.C. Cir. 1963). At this stage, GPS can only prevail if no reasonable consumer would be deceived by its representations and omissions.

Puffery concerns "statements [that] embody exaggerations, the truth or falsity of which cannot be determined easily, that amount to no more than an expression of the seller's opinion about the character or quality of the product. *Bridgestone/Firestone, Inc. v. Cap Gemini Am., Inc.*, No. CIV.A. 00C-10-058HDR, 2002 WL 1042089, at *5 (Del. Super. Ct. May 23, 2002). When a seller claims that representations are mere puffery, courts must be cautious. *Id.* "[T]he

question of whether a particular statement amounts to an actionable misrepresentation will generally be left to the fact finder." *Id.*  (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 109, at 757 (5th ed.1984)). Whether a statement is labeled puffery or a warranty, requires more than a review of the words used. Rather, the full circumstances of the case must be examined.

### 1. Superior Technology

GPS markets its products as far superior than other air treatment systems in order to generate sales. However, testing shows that its Products do not work as represented and suffered from undisclosed defects. Additionally, other technologies are at a minimum equally effective and cost less than GPS' products. Therefore, it is deceptive for GPS to claim that it offers superior technology that is "the safest, most effective technology on the market."

Further, this representation is not puffery. When representations are made which may – in isolation – be considered puffery, courts will examine the full context to see if those same statements are considered puffery to the consumer. *See In re Milo's Dog Treats Consol. Cases,* 9 F. Supp. 3d 523, 532 (W.D. Pa. 2014) (finding that "good for pets" may be puffery by itself, but even if it is, it contributes to the deceptive context as a whole, and as such cannot be divorced from other specific deceptive representations); *Sterling Drug, Inc. v. FTC*, 741

F.2d 1146, 1151 (9th Cir. 1984) (claims of better purity, stability, and speed of disintegration than competition are not puffery).


    *2. Eliminates VOCs*

GPS plays a game of semantics[3] yet fails to address the facts. Whether the word eliminate or destroy is used, Garner and reasonable consumers interpret GPS' representations to mean that its Products remove VOCs and do not create additional VOCs. This is further established with its numerous "cleaner air" representations. Its sole support is that it claims that its products eliminate some VOCs. Yet, this does not cure GPS' deceptive representation to consumers because the overall net impression is the focus, not a potentially partial truth advocated by the defendant. *See FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 958 (N.D. Ill. 2006) (an advertisement is deceptive if the overall net impression is misleading).

    Concerning puffery, GPS generally cites two cases from outside the Third Circuit and both have little application. The *Kurin* court solely reviewed under the literally false standard – not the additional misleading standard as Garner pleads – and the  defendant won on many of its arguments merely because plaintiff offered no rebuttal. 473 F. Supp. 3d 1117, 1146 (S.D. Cal. 2020).  In *Buetow*, the

---

[3] Eliminate: "to put an end to or get rid of" vs. destroy: "to put out of existence" https://www.merriam-webster.com/dictionary/

concurrence raises concern that the "majority's conclusion that the 'odor eliminating' and 'reactivation' claims are merely 'puffery' does not square with this court's definition of puffery…" 650 F.3d 1178, 1188 (8th Cir. 2011).

### 3. No Harmful Byproducts

GPS' Products release toxic substances. GPS disputes the quantities and the testing methods. This question of fact cannot be resolved at this stage.

Moreover, the amount of toxins is not dispositive because consumers apply meaning and value to words. *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 889 (Cal. 2011) (noting importance of kosher, fair labor, and conflict free representations).  Many reasonable consumers, including Plaintiff, would not desire a product with any amount of toxic substances.

### 4. Safe to Use

GPS' representations of safety are deceptive because it produces harmful byproducts and overstates the effectiveness against COVID-19. This renders the Products unsafe to a reasonable consumer.

Statements concerning product safety are not puffery. Once again, GPS doesn't elucidate or explain. It merely places citations under a heading. Regardless, they all fail under scrutiny. *Fusco* was based on a Pennsylvania Commonwealth

11

Court opinion that was later rejected by the Pennsylvania Supreme Court.[4] *Azolilai* doesn't even involve a similar fact pattern. In that case, the plaintiff attempted to imply a safety feature that manufacturer never promised and notably BMW didn't sell a "safety" product, it sold a car.[5]  GPS' marketing efforts and focus are on supplying "safe and clean" air.

Rather, claims of safety have immense value to consumers. Companies must disclose safety risks that are not apparent to a casual user. *Firestone Tire & Rubber Co.*, 81 F.T.C. 398, 456 (1972). Further, advertising a product to homeowners carries an implicit representation to it is safe for household use. *Cole v. Sunnyside Corp.*, 610 N.W.2d 511 (Wis. Ct. App. 2000).

### 5. Cleaner Air

GPS claims that it makes "cleaner air" despite producing additional VOCs. By only examining the "total" rather than the ratios, GPS makes an argument which misses the mark. If one removes a pound of lead from a room and replaces it with an ounce of uranium, the environment is not improved.

GPS doesn't say "cleanest air in America" rather it says it produces "cleaner air."  In contrast, "cleaner" is not puffery. *Castrol, Inc. v. Pennzoil Quaker State*

---

[4] *See Parrish v. Volkswagen Grp. of Am., Inc.,* 463 F. Supp. 3d 1043, 1050n.4 (C.D. Cal. 2020).
[5] *Azoulai*, 2017 WL 1354781 at *8.

*Co.*, 169 F. Supp. 2d 332, 336 (D.N.J. 2001). Additionally, GPS sells a product

that it markets as producing "cleaner air"; in *Trident Atlanta*, the products at issue

were restaurant franchises which primarily focus on food sales not air quality. 2020

WL 6889208 at *7.

### 6. Independent Testing; COVID Pandemic and Benchmarks

GPS claims that that the sources do not reference GPS' Products and merely

reference general ionization technology. Yet another lie by GPS. The technology at

issue is needlepoint bipolar ionization, also known as NPBI. GPS claims to own

the patent on needlepoint bipolar ionization technology, and it claims[6] to have a

federally registered trademark for NPBI. Therefore, any reference to a product

using NPBI can only refer to a GPS Product or a product produced by GPS for

another company. That distinction doesn't matter because it's the technology that

underlies the Products. The majority of the references cited refer or link to GPS or

NPBI. *See* Exhibit A (emphasis added).

The "real world conditions" cases cited by Defendant miss the mark entirely.

Defendant's testing involved clear manipulation. In *Kurin*, the "real world"

---

[6] GPS uses the ® symbol, but it does not have the authority to use the symbol
because its trademark for NPBI is not yet registered with the USPTO.

discrepancy involved the testing methods.[7] This is a far cry from what GPS does with its studies.  GPS' deception is threefold.

First, GPS artificially boosted the ionization levels far in excess of the Products' capabilities. This is admitted by its founder. (Compl. ¶ 133.) This is the equivalent of an auto manufacturer claiming its vehicle is the fastest on the market – superior to Lamborghini and advertises a 0-60 time of  2.1 seconds. While that time was accurate when tested, the provided car had a "hot" engine outputting 900 horsepower while the vehicle sold to consumers outputs a mere 150 horsepower. While that example strains credulity, GPS' "hot" tests are the equivalent of that same car outputting 1,950 horsepower.

Second, GPS improperly uses "shoebox" sized labs to support efficacy for entire rooms/buildings.

Third, GPS funds the studies and exerts control thus rendering them far from independent. GPS paid for the studies, and as described in the complaint, controlled the studies in an effort to bolster its sales. After losing in a jury trial, the defendant in *Dyson v. SharkNinja* filed a renewed JMOL under the theory that no reasonable jury could have found that it lied about its "independent test" claim and exerted control over a third party laboratory. 2019 WL 1454509, at *6-7 (N.D. Ill.

---

[7] For example, "The fact that a non-controlled study will result in a different contamination rate than a controlled study does not render controlled study results unreliable." *Kurin*, 473 F. Supp. 3d at 1132 (S.D. Cal. 2020).

Mar. 31, 2019). Like the case at bar, the defendant paid for the study and instructed the lab to test its product in a higher mode. *Id.* Ultimately, the court ruled that the jury was reasonable and denied the defendant's request. *Id.* Here, GPS' conduct is far worse because it knowingly tested under conditions that were not achievable in the real world. (Compl. ¶ 133.)

GPS claims the Boeing study doesn't use a GPS product. Yet another lie. The study makes multiple references to NPBI, links to publications by GPS' Founder, and includes GPS' testing claims. Claims that Boeing was unable to replicate because the GPS products could not deliver and maintain the necessary ion levels to achieve disinfection. These levels could not be met because GPS artificially boosted them in its "independent" studies.

GPS claims that Boeing and Trane studies failed to test COVID. However, COVID is a virus. If a technology is not shown to be effective for viruses, it logically holds that it would not be effective for COVID.

It also claims both studies were inconclusive, and therefore its Products are effective because they haven't been shown to be ineffective. But, that assertion defies logic. As GPS notes, the only testing that found it to be effective for COVID-19 was its study. No other study can substantiate its COVID-19 claim. As Chief Judge Easterbrook summarized:

> Although it is true, as Arthur C. Clarke said, that "[a]ny sufficiently advanced technology is indistinguishable from magic" by those who

15

don't understand its principles ("Profiles of the Future" (1961)), a person who promotes a product that contemporary technology does not understand must establish that this "magic" actually works. Proof is what separates an effect new to science from a swindle. Defendants themselves told customers that the [product's] efficacy had been "test-proven"; that statement was misleading unless a reliable test had been used and statistically significant results achieved.

512 F.3d 858, 862 (7th Cir. 2008)

### E.   Plaintiff Properly States All Claims

*1. Deceit and Fraudulent Concealment*

In Maryland, a duty exists "where the defendant makes an active

misstatement of fact, or only a partial or fragmentary statement of fact, which

misleads the plaintiff to its injury." *Singh*, 2021 WL 37660 at *11 (quoting

*Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 629 (D. Md.

2003)). Here, Mr. Garner pleads in sufficient detail that GPS (who) knew of the

defect (what) prior to sale (when), which it omitted from all the channels in which

it sold and marketed Products (where) and which resulted in concealment and

failure to disclose (how).

In discussing duty, once again, GPS takes liberties with the law it cites. The

complete language reads: "Absent a fiduciary relationship, [the Court of Appeals

of Maryland] has held that a plaintiff seeking to establish fraudulent concealment

must prove that the defendant took affirmative action to conceal the cause of action

and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence.' " *My Nat. Tax & Ins. Servs., Inc. v. H & R Block Tax Servs.*, Inc., 839 F. Supp. 2d 816, 820 (D. Md. 2012). In these cases, "the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. 2007). Here, GPS has taken many actions to exclude suspicion including, but not limited to, filing lawsuits against anyone alerting to the defects. (Compl. ¶ 142.) Additionally, Mr. Garner reliance was justified as shown by the alignment of the beliefs of numerous purchasers. (Compl. ¶ 119;144.)

### 2. Plaintiff provided pre-suit notice.

Plaintiff provided pre-suit notice to manufacturer prior to the filing of the lawsuit. GPS attempts to add additional notice requirements that are not based in law. There is no requirement that the notice mention litigation[8] or demand a refund.[9] Rather, the notice requirement is not meant to be burdensome: "the

---

[8] U.C.C. § 2-607 cmt. 4. *See T.J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 359–364 (5th Cir. 1980).
[9] *Hangzhou Silk Imp. & Exp. Corp. v. P.C.B. Int'l Indus., Inc.*, 48 U.C.C. Rep. Serv. 2d 1367 (S.D.N.Y. 2002) (notice need not demand damages); *State v. Patten*,

content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched…" UCC §§2-607 (comment 4). Further, the requirement over time has been "greatly liberalized to reflect the differences between commercial buyers and consumers." *Cline v. Prowler Indus. of Maryland, Inc.*, 418 A.2d 968, 977 (Del. 1980). Even general statements of dissatisfaction satisfy the requirement.[10] Mr. Garner satisfies this standard because he informs GPS that he is dissatisfied, and the transaction is troublesome and must be watched.

### 3. Breach of express warranty does not require privity.

There is no privity requirement for warranty actions under Maryland law. Maryland has abolished the privity for implied warranties. Md. Code Ann., Com. Law § 2-314(1)(b). Maryland's highest court, while addressing implied warranties, used language that eliminated privity requirements for express warranties like the case at bar. *Morris*, 667 A.2d at 636. Additionally, Maryland's consumer warranty statute provides that any guarantor or service contract provider is liable to the

---

416 N.W.2d 168 (Minn. Ct. App. 1987) (notice of breach need not be a claim for damages; this is "too onerous a burden on the buyer").

[10] *See Lewis v. Mobil Oil Corp.*, 438 F.2d 500 (8th Cir. 1971) (buyer's statement that he was "not sure the right oil was being supplied" is adequate); *Lanners v. Whitney*, 428 P.2d 398 (Or. 1967) (airplane buyer's statement that he encountered unanticipated difficulty and that "it couldn't go on this way" suffices).

buyer for any wrongful breach of a guaranty. In the definition of Guarantor, the language is intentionally crafted to include manufacturers. Md. Code Ann., Com. Law §§ 14-401(c), 14-407(c).

Removing a privity requirement in express warranty claims follows the purpose of warranty law. The manufacturer introduces products into the stream of commerce knowing and intending their use. Moreover, the manufacturer does the bulk of the advertising and promotion of the product. To impute a privity requirement would allow manufacturers to escape liability and to impose the burden on the retailer despite the manufacturer's control of the characteristics, quality, promotion, description, and distribution of the product. As the Fourth Circuit notes, requiring vertical privity "would let a manufacturer avoid express warranty representations made to a buyer simply by insuring that the actual contract of sale was with a dealer or other third party." *Fullerton Aircraft Sales & Rentals, Inc. v. Beech Aircraft Corp.*, 842 F.2d 717 (4th Cir. 1988).

### 4. Implied Warranties Are Properly Pled

Garner alleges throughout the complaint that the product is defective because it fails to safely, effectively clean the air of VOCs and COVID-19. Thus, it is not merchantable.

In some instances, an ordinary purpose and a particular purpose can overlap.

In *Di Ienno*, the "particular purpose" was opening and closing a glass jar. 668 F. Supp. 373, 376 (D. Del. 1987). This is a far cry from the complex technologies and purported health benefits at issue herein. UCC §§ 2-315, which underpins the laws of Delaware and Maryland,[11] is to be liberally construed and administered to promote its underlying purpose. U.C.C. §§ 1-103(a); U.C.C. §§ 1-305. Consistent with these principles, courts have applied UCC 2-315 where the buyer's purchase is the ordinary purpose for the goods. Maryland courts allow overlapping ordinary and particular purposes. For example, in *Thomas v. Ford Motor Credit Co.*, the court found that a vehicle also had a particular purpose for driving on the road. 429 A.2d 277 (Md. Ct. Spec. App. 1981).

### 5. MMWA Claim is proper.

GPS claims that its Products are only used for commercial purposes. Even a cursory review of this assertion exposes its falsity. See Exhibits B-D. In fact, in an official press release, GPS' CSO stated, "This technology can help create healthy environments at home, at work, at school and beyond." (Compl. ¶ 59(h)(ii).) Further, because the state law warranty claims are properly pled, the MMWA claim survives.

---

[11] Md. Code Ann., Com. Law § 2-315.

Lastly, MMWA cases containing less than 100 named plaintiffs survive when – like the case at bar - CAFA jurisdiction provides an alternative basis for jurisdiction. *See Kuns v. Ford Motor Co.*, 543 Fed. Appx. 572, 574 (6th Cir. 2013) (allowing CAFA to supersede MMWA's jurisdictional requirement of one hundred named plaintiffs in a class action); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n. 1 (9th Cir. 2009) (finding that court had jurisdiction pursuant to the CAFA over purported class action alleging violations of the MMWA and state law); *Van Zeeland v. Rand McNally*, 2021 WL 1209155, at *3 (N.D. Ill. Mar. 31, 2021); *Stella v. LVMH Perfumes and Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837–38 (N.D. Ill. 2008); *Chapman v. Gen. Motors LLC*, 2021 WL 1286612, at *24 (E.D. Mich. Mar. 31, 2021); *But see Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1033 (9th Cir. 2020).

### 6. MCPA Violation

Mr. Garner properly pleads an MCPA violation. While the representations made by GPS are clear and definite – and thus satisfy the standard for misrepresentations – Mr. Garner also brings claims based on omission and concealment.

As discussed previously: (1) the representations made by GPS are deceptive, non-puffery; (2) justified reliance was pled; and (3) use of product was primarily for personal, household, or family purpose.

In addition, GPS – yet again – takes liberties with the law. "Substantial injury" is not a requirement for all MCPA violations. The citation provided by GPS states that "substantial injury" is only required for MCPA violations premised on "unfair" practices. *Hibdon v. Safeguard Properties, LLC*, No. CIV. PJM 14-591, 2015 WL 4249525, at *4 (D. Md. July 9, 2015). Mr. Garner pleads both. (Compl. ¶ 267-69.) Under the deceptive standard, a plaintiff is only required to "articulate some manifestation of loss," including "a difference between what was expected and what was received as a result of [a] misrepresentation." *Lloyd*, 916 A.2d 257 n.17. While "substantial injury" requires more, Mr. Garner meets that definition as well. Substantial injury may be met with monetary harm or unwarranted health and safety risks. Mr. Garner pleads both.

### 7. Unjust Enrichment

GPS was conferred a monetary benefit because Mr. Garner purchased the Product. Additionally, GPS misses the exception to the general rule it cites. Courts will permit unjust enrichment claims "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the contract, when

22

rescission is warranted, or when the express contract does not fully address a subject matter." *Janusz v. Gilliam*, 947 A.2d 560, 567–68 (Md. 2008).

### III.     Conclusion

For the foregoing reasons, the Court should deny the Motion to Dismiss in its entirety. To the extent the Court determines that the pleadings are deficient in any respect, Plaintiff respectfully requests leave to amend.


Dated: June 7, 2021                              Respectfully submitted,

                                                 **CHIMICLES SCHWARTZ KRINER &**
                                                 **DONALDSON-SMITH LLP**


                                                  */s/ Robert J. Kriner, Jr.*
                                                 Robert J. Kriner, Jr. (Del. Bar No. 2546)
                                                 Scott M. Tucker (Del. Bar No. 4925)
                                                 Tiffany J. Cramer (Del. Bar No. 4998)
                                                 2711 Centerville Rd., Suite 201
                                                 Wilmington, DE 19808
                                                 Tel.: 302-656-2500
                                                 rjk@chimicles.com
                                                 smt@chimicles.com
                                                 tjc@chimicles.com

OF COUNSEL:

CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP
Timothy N. Mathews*
361 W. Lancaster Ave
Haverford, PA 19041
Tel.: 610-642-8500
tnm@chimicles.com

REICH & BINSTOCK LLP
Dennis C. Reich, Esq.*
4265 San Felipe, Suite 1000

Houston, TX 77024
Phone: (713) 622-7271
Fax: (713) 623-8724
dreich@reichandbinstock.com

THE MILLS LAW FIRM
Michael A. Mills, Esq. (*pro hac vice*)
8811 Gaylord Drive
Suite 200
Houston, TX 77024
Phone: (832) 548-4414
Fax: (832) 327-7443
mickey@millsmediation.com

THE KEETON FIRM LLC
Steffan T. Keeton, Esq. (*pro hac vice*)
100 S Commons, Ste. 102
Pittsburgh, PA 15212
1-888-412-5291
stkeeton@keetonfirm.com

*Attorneys for Plaintiff and the Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of June, 2021, a true and correct copy of this Memorandum was filed with the Court via the Electronic Case Filing System, and was served on all counsel of record through the same means.

*/s/ Robert J. Kriner, Jr.*