IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT S. GARNER, on behalf of himself and all others similarly situated

        *Plaintiff*,

  v.

GLOBAL PLASMA SOLUTIONS INC.

        *Defendant*.

No. 1:21-cv-00665-SB

---

Robert J. Kriner, Jr., Scott M. Tucker, Tiffany Joanne Cramer, Timothy Mathews, CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP, Wilmington, Delaware; Steffan T. Keeton, THE KEETON FIRM LLC, Pittsburgh, Pennsylvania.

*Counsel for Plaintiff.*

Adam Wyatt Poff, YOUNG, CONAWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware; R. Trent Taylor, MCGUIREWOODS, Richmond, Virginia.

*Counsel for Defendant.*

**MEMORANDUM OPINION**

March 10, 2022

BIBAS, *Circuit Judge*, sitting by designation.

When a crisis strikes, some people scramble to make a quick buck. Frightened men are easy targets. The COVID-19 pandemic is no different. Robert Garner says he bought an "air ionizer" because he was told it would protect him. But he has now seen scientific studies that suggest that he was duped. So he sued the manufacturer, Global Plasma, for fraud, consumer-protection violations, breach of warranty, and unjust enrichment. Because he identifies misrepresentations, his fraud claim survives. But I dismiss his other claims.

## I. BACKGROUND

On this motion to dismiss, I take the complaint's allegations as true. Like millions of Americans, Garner worried about catching COVID. Compl., D.I. 1 ¶¶ 37, 146, 164. He was relieved to hear Global Plasma promising that its air ionizer could cleanse the air of the virus and other harmful compounds. *Id.* ¶¶ 56–57, 59, 148, 164−66. So he bought one. *Id.* ¶¶ 162–63, 170.

Global Plasma's products use "[b]ipolar [i]onization technology" to clean the air. *Id.* ¶¶ 48–49. This technology is "complex," so I will refer to the scientific studies Garner provides to describe it. Trane Technologies, *A Taxonomy of Air-Cleaning Technologies Featuring Bipolar Ionization* 3 (2021), D.I. 7-1, exh. J; *see Twardzik v. HP Inc.*, No. 1:21-cv-00396, at 11 (D. Del. Jan. 25, 2022) (reviewing a document linked in the complaint).

Bipolar ionizers release ions into the air to break up airborne contaminants. Trane Technologies 3–4. That effectively removes "dust, pollen, [and] dander" from the air. *Id.* at 4. But the jury is still out on whether ionizers can filter out smaller dangers.

2

Compl. ¶¶ 98–99. *Compare* Trane Technologies 8 ("[W]e did not see efficacy for [small chemical compounds]."), *with* Yicheng Zeng et al., *Evaluating a Commercially Available In-Duct Bipolar Ionization Device for Pollutant Removal and Potential Byproduct Formation*, Building & Enviro. 8 (Mar. 7, 2021), D.I. 7-1, exh. H (finding lower total compounds in the air with the ionizer than without).

It is also unclear whether ionizers can screen out airborne viruses. Global Plasma sponsored studies showing that its ionizers could "effectively neutralize[]" COVID on surfaces and in the air. Compl. ¶ 62(j); *see also id.* ¶¶ 62(f), 107–08. But outside testing reached mixed results. Two studies found no reduction of viruses on surfaces. Another said it failed to cleanse the air too. *See* Trane Technologies 8 (noting that the technology works for "in-air pathogens" but not for "pathogens on surface[s]"); Stephanie Licht et al., *Use of Bipolar Ionization for Disinfection Within Airplanes*, Boeing 22 (2021), D.I. 7-1, exh. I (bipolar ionizers have "not shown significant disinfection").

These studies dismayed Garner. Compl. ¶¶ 149–51, 169. He feared that an ineffective ionizer had lulled him into "a false sense of security." *Id.* ¶¶ 5, 169. So he filed this class action, claiming that Global Plasma deceived him and other consumers, breached warranties, violated consumer-protection laws, and unjustly enriched itself. *Id.* ¶¶ 181–279. He seeks damages and restitution. *Id.* ¶ 280(c); *see also* D.I. 11, at 1 n.1 (withdrawing Garner's request for an injunction).

Global Plasma moves to dismiss.. D.I. 5. It says Garner lacks standing to seek individual remedies or to bring claims on behalf of other consumers. D.I. 6, at 12–14, 21–22. And at any rate, it says, he has not stated a claim. *Id.* at 14–21.

Global Plasma's standing arguments fail, but most of its merits contentions succeed. So I dismiss all but Garner's misrepresentation claim, though I will let him amend.

## II. GARNER HAS STANDING

Start with standing. Global Plasma says Garner has not suffered an injury that merits damages or restitution. D.I. 6, at 12–13. Plus, it argues, he cannot represent a multistate class when he is "not a resident of the other states." *Id.* at 21. Nor can he represent people who purchased different Global Plasma ionizers. *Id.* at 13–14. But these arguments all fail.

### A. Individual remedies

Garner can personally seek damages and restitution because he plausibly pleads that the ionizer did not do what he "expected it to do": cleanse the air. *In re Johnson & Johnson Talcum Powder Prods. Marketing, Sales Practices & Liability Litig.*, 903 F.3d 278, 283, 285, 292 (3d Cir. 2018); *see* Compl. ¶¶ 6, 13, 18, 160, 165–69. Had he known that it would not sufficiently "improve air quality" and protect him from COVID, he would not have spent hundreds of dollars on it. *Id.* ¶¶ 163, 168, 170; *see also In re Johnson & Johnson*, 903 F.3d at 285, 291–92. That suffices for standing. *Id.*; *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972).

### B. Multistate class standing

Garner may also bring claims on behalf of a multistate class, at least at this stage. Any problem with raising claims under several states' laws goes to the propriety of class certification, not standing. *Twardzik*, No. 1:21-cv-00396, at 7–8. A plaintiff has standing if he can show a judicially redressable injury. *Id.* at 7. And a plaintiff's injury

4

is not pegged to the laws of different states: an injury is an injury even if no law allows recovery. *Id.* at 7–8. If Global Plasma worries about applying different states' laws down the road, it should oppose class certification. *See id.* at 7 (citing *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011)).

### C. Unbought products

Similarly, it is too early to lop off class claims for different Global Plasma ionizers. *See* Compl. ¶ 2 n.1. Though Garner did not personally buy them, he may represent others who did if their claims sufficiently resemble his. *Lisowski v. Henry Thayer Co.*, 2021 WL 1185924, at *4 (W.D. Pa. Mar. 30, 2021).

Admittedly, "case law in this area is sparse," and district courts are closely divided. *Id.* at *3. Some dismiss claims about products the plaintiff did not "purchase[] or use[]." *See, e.g.*, *Liberseon v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011). Those courts reason that a plaintiff could not be "personally … injured" by those products. *Id.* But other courts decide those questions only at the certification stage. *Lisowski*, 2021 WL 1185924, at *4. On a motion to dismiss, these courts allow a case to proceed so long as the products, claims, and defendants are "sufficiently similar." *Id.* at 3 (internal quotation marks omitted).

This second line of cases persuades me. As those courts point out, "there is a distinction between … the plaintiff's individual standing" and "[his] ability to represent absent others" in a class action. *Id.* A plaintiff may have a clear injury from one product. His ability to represent others who bought different products depends on how similar the products and claims are—in other words, whether "there are questions of

5

law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That is a certification problem, not a standing one.

Here, the putative class's claims focus on misrepresentations about and deficiencies in the bipolar-ionization technology used by all Global Plasma's ionizers, not the individual products. *See* Compl. ¶ 2 n.1. Thus, I will not dismiss the claims based on the other ionizers just yet.

### III. GARNER SUFFICIENTLY PLEADS FRAUD

On to the merits. Four of Garner's claims (fraudulent misrepresentation, fraudulent concealment, consumer protection violations, and unjust enrichment) "are based on fraudulent activity." *Menzies v. Seyfarth Shaw, LLP*, 1:21-cv-00249, at 5–6 (D. Del. Nov. 22, 2021); *see* Compl. ¶¶ 181–90, 254–79. So they must meet the heightened pleading requirements of Rule 9(b), which requires plaintiffs "alleging fraud" to "state [their claims] with particularity." Fed. R. Civ. P. 9(b).

Garner identifies dozens of statements that he thinks are misleading. Compl. ¶¶ 50–65. Global Plasma disagrees. It says none of the statements are deceptive. D.I. 6, at 5–12. Plus, it adds, Garner never explained how he was misled. *Id.* at 116.

Only some of Global Plasma's arguments succeed. I agree that some of the statements are not actionable misrepresentations, but others are. So Garner's misrepresentation claim survives, though his fraudulent-concealment, consumer-protection, and unjust-enrichment claims do not.

#### A. The statements

Not all misrepresentations merit a lawsuit. Actionable statements misstate "material facts" that can be measured or known. *Daniyan v. Viridian Energy LLC*, 2015

WL 4031752, at *2 (D. Md. June 30, 2015). Mere "estimate[s] or opinion[s] or puffing" are not actionable. *Id.* (quoting *Dean v. Beckley*, 2010 WL 3928650, at *2 (D. Md. Oct. 1, 2010)).

Many statements Garner points to are mere puffery. Though too long to be quoted here, these statements can be neatly categorized.

*1. Mission statements.* Several statements describe Global Plasma's research goals: developing safe technology, "improving indoor air quality," and countering the pandemic. Compl. ¶¶ 55(a), 58(a), 59(h)(ii), 62(a)–(c) & (h). Garner might dispute Global Plasma's success in reaching those goals. Even so, they are only "general statements regarding the [c]ompany's values and motivations, and thus, constitute puffery." *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *15 (D.N.J. Dec. 27, 2019).

*2. Generally safe.* Another set of statements are promises that Global Plasma's ionizers are generally "safe for occupied spaces." Compl. ¶¶ 55(b), 58(b) & (d). Statements promising safety might be actionable, if specific enough (more on that later). *Fusco v. Uber Tech., Inc.*, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018). But a general promise that a product is "safe" is too general to be tested in court: "there is no way to prove that a product is … in the abstract, safe." *Id.* (internal quotation marks omitted). Thus, these statements are also puffery.

*3. Peace of mind.* Finally, one statement promises that the ionizers can give "peace of mind during this evolving pandemic." Compl. ¶ 62(b). But like promises of general safety, promises that a product "will alleviate worry" are not "objectively

7

measurable." *ConsulNet Computing, Inc. v. Moore*, 2007 WL 2702446, at *9–10 (E.D. Pa. Sept. 12, 2007) (internal quotation marks omitted).

Other statements are measurable but not clearly false:

*4. Descriptions of bipolar ionization.* Global Plasma said its products send ions "out into [a] space" to "seek[]… out contaminants." Compl. ¶ 55(c). "[W]hen ions come into contact with pathogens …, they disrupt the [contaminants'] surface proteins … render[ing] them inactive." Compl. ¶ 62(f); *see also id.* ¶¶ 56(c), 62(d). Garner cites studies that challenge how effective that process is, but he does not dispute that bipolar ionization works that way. *See, e.g.*, Licht et al. at 3–4; Trane Technologies at 3–4.

*5. Ozone-free.* A few more statements promise that the ionizers are safe because they do not produce harmful ozone. Compl. ¶ 58(e), (g) & (h); *see also id.* ¶ 57(b)(1) & (3), (c), (e)–(g) (promising, in part, that the ionizers do not produce ozone). These safety claims "can be prove[n] true or false," so they are not puffery. *Fusco*, 2018 WL 3618232, at *6. But Garner does not allege that these statements are false. His studies conclude that Global Plasma's ionizer does not emit ozone. Trane Technologies at 5; Licht et al. at 16; Zeng et al. at 11.

*6. Cleaner air.* Another group of statements promise that the ionizer cleans air. Compl. ¶¶ 58(c), 59(a), (c)–(g). Again, Garner does not allege that this is false. His studies say that though the ionizers might multiply some chemicals, they apparently filter out more than they add. *See* Zeng et al. at 8; Trane Technologies at 8.

*7. Odor-reducing.* Other statements promise that the ionizer can neutralize odors. Compl. ¶¶ 56(a)–(b), 57(b)(2). But neither Garner's studies nor his complaint say that this is false.

*8. Testimonials.* Finally, Garner quotes some glowing testimonials about the ionizer's effectiveness. Apparently, at some installations, the ionizer "effectively neutralized odors," "reduce[d] pathogens," and cleansed the space. Compl. ¶ 60(a), (c)–(d). These testimonials may be *unrepresentative*. Garner suggests as much. *Id.* ¶ 60. But he does not say they are *false*. He does not, for instance, suggest that they were fabricated or bought. *Cf. Morgan v. Markerdowne Corp.*, 201 F.R.D. 341, 345 (D.N.J. 2001); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 410 (D.N.J. 1998); *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1389 (M.D. Fla. 2018).

But a handful of statements are at least arguably false:

*9. Third-party testing.* First, Garner protests Global Plasma's depiction of commissioned tests as "independent." Compl. ¶¶ 55(d), 60(b), 61, 62(e), (g), (k). Tests can hardly be independent, he says, if they were "funded by [Global Plasma]." *Id.* ¶ 150; *see id.* ¶¶ 3, 53, 118.

Indeed, Global Plasma needed to disclose its relationship with the testers. *See Roca Labs*, 345 F. Supp. 3d at 1389. Granted, it apparently did for some tests. *See, e.g.*, Compl. ¶ 62(j) n.78; News Release, *GPS Virtually Eliminates Static SARS-CoV-2 with Proprietary NPBI Technology* (June 10, 2020), https://perma.cc/WVW3-XPRG (acknowledging that Global Plasma "jointly executed" the test with the third-party tester).

9

But some disclosures are buried; others, nonexistent. For instance, Global Plasma's "Independent Testing" webpage did not mention that it had commissioned any of the studies touted. *See* D.I. 7-1, exh. C. True, it says that information could be found by digging into the studies themselves. D.I. 6, at 8. But in other areas of the law, burying facts is insufficient disclosure. *See, e.g.*, *Werner v. Werner*, 267 F.3d 288, 297 (3d Cir. 2001); *Am. Orthopedic & Sports Medicine v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 452 n.6 (3d Cir. 2018). So at this stage, Garner plausibly points to a misrepresentation.

*10. No harmful byproducts.* Global Plasma also promised that the ionizer produces no "harmful byproducts." Compl. ¶¶ 55(e), 56(d), 57(a)–(g), 59(b), (i). Instead, it is supposed to break down compounds into some combination of the "four basic elements: oxygen, nitrogen, carbon dioxide or water vapor." *Id.* ¶ 57(a).

But Garner cites a study suggesting that the ionizer might produce other chemicals too. Zeng et al. at 8–9, 11–12. At least some of those chemicals might be harmful, if produced in sufficient quantities. Compl. ¶¶ 80–86.

Global Plasma retorts that the study never says the chemicals reach those levels. D.I. 6, at 7. But focusing on the levels produced shifts the goalposts: Global Plasma promised that its ionizer would release *no other byproducts*. Thus, its promises appear false.

*11. Proven against COVID.* Finally, Global Plasma labeled its ionizers "a proven tool in the fight against COVID-19." *Id.* ¶ 62(i). And it suggested the ionizers could filter COVID out of the air and disinfect surfaces. *See also id.* ¶¶ 59(h)(i), 62(d). But

two studies contradict these claims. Each concludes that the ionizers likely would not disinfect surfaces. Trane Technologies 8; Licht et al. 16. And they reached inconsistent results about viruses in the air. *Compare* Trane Technologies 8, *with* Licht et al. 22.

True, as Global Plasma points out, these studies are "inconclusive." D.I. 6, at 9 (quoting Licht et al.). And its own studies concluded differently. *Id.* But I must leave the scientific debate for a later stage. *Cf. Daubert v. Merrell Dow Pharma.*, 509 U.S. 579 (1993). At this point, Garner plausibly identifies a misrepresentation.

To summarize, Garner has identified three potential misrepresentations: (1) that Global Plasma used independent testing, (2) that its ionizers give off only four by-products, and (3) that they are effective at stopping COVID.

But no matter, Global Plasma says. Garner has not pled the other elements of his fraud-based claims. I turn there next.

### B. Garner's fraudulent-misrepresentation claim survives

Global Plasma lobs two more attacks at Garner's fraudulent-misrepresentation claim. *Cf.* Compl. ¶¶ 181–90. Both fail.

First, it says, Garner has not sufficiently described how he relied on its misstatements. D.I. 6, at 16; *see Won Kim v. US–1 Flea Mkt. LLC*, 2018 WL 1791916, at *3 (Md. Ct. Spec. App. Apr. 16, 2018) (misrepresentation elements).

Not so. After quoting the misstatements at length, Garner says he "observed and read" them on "[Global Plasma's] website … and social media." Compl. ¶ 165. *Cf. Twardzik*, No. 1:21-cv-00396, at 11 (dismissing claim because plaintiff did not say he had seen defendant's marketing); *Hill v. Brush Engineered Materials, Inc.*, 383 F.

11

Supp. 2d 814, 823 (D. Md. 2005) (dismissing because plaintiff failed to describe "how she came to rely on" defendant's misrepresentations). These statements—particularly the ones promising that the ionizer could mitigate COVID—persuaded him to buy it. Compl. ¶¶ 1, 165. At this stage, that is enough to show reliance. *Cf. Snyder v. Cynosure, Inc.*, 2019 WL 1386727, at *6 (D. Md. Mar. 27, 2019).

Second, Global Plasma argues that Garner could not have *reasonably* relied on its statements because its "website is replete with disclaimers." D.I. 6, at 9–10, 16. But it is unclear whether those disclaimers were posted to Global Plasma's website when Garner visited it—his complaint never mentions them.

Even if they were, the disclaimers are too general to disclaim the actionable misstatements. *Cf. EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 873 (3d Cir. 2000) (requiring disclaimers in securities cases to be "tailored" to the misstatements (internal quotation marks omitted)). At most, the disclaimers warn clients to "evaluate their individual … conditions when making an assessment regarding the [ionizer's] potential benefits." Global Plasma Solutions, *Disclaimers*, https://perma.cc/E546-XMUP; *see also* Global Plasma Solutions, *Third-Party Testing*, https://perma.cc/UFK6-BLQB (linking to the disclaimer). So that attack flops too. Garner's misrepresentation claim may move forward.

### C. Garner's fraudulent-concealment claim fails

But Garner's other fraud-based claims run into trouble. Start with fraudulent concealment. *Cf.* Compl. ¶¶ 181–90; *Rhee v. Highland Dev. Corp.*, 958 A.2d 385, 390 (Md. Ct .Spec. App. 2008) (fraudulent concealment elements). To state that claim, Garner must to plead "that [Global Plasma] took affirmative action to conceal" facts

12

undermining its claims. *My Nat'l Tax & Ins. Servs., Inc. v. H & R Block Tax Servs., Inc.*, 839 F. Supp. 2d 816, 820 (D. Md. 2012) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. 2007)).

He does not. Instead, he claims that Global Plasma sued its critics. Compl. ¶ 142 & n.137. A frivolous lawsuit could perhaps be an "affirmative action," if its only purpose was to silence detractors. But Garner does not provide enough information about these suits to indicate whether that is true here. Besides, most lawsuits are "matters of public record" that hardly "conceal … relevant fact[s]." *Finley Alexander Wealth Management, LLC v. M&O Mktg., Inc.*, 2021 WL 1215769, at *10 (D. Md. Mar. 31, 2021) (cleaned up). So I must dismiss Garner's fraudulent-concealment claim.

**D. Garner's consumer-protection claim fails too**

Next, Global Plasma targets Garner's consumer-protection claim. D.I. 6, at 19–20; Compl. ¶¶ 254–70. Under Maryland's consumer-protection statute, a consumer can sue for "[u]nfair, abusive, or deceptive trade practices," including misleading marketing. Md. Code Ann., Com. Law §§ 13-301(1)–(3), (5), (9), 13-408.

Garner satisfies many of this claim's requirements. As I have explained, he identifies misleading marketing, his reliance on it, and a resulting injury. *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 319 (D. Md. 2014).

But Garner falters on a threshold condition: only a buyer of consumer goods can sue for consumer-protection violations. Yet Garner has not shown that the ionizer is a "consumer good[]": something bought "primarily for personal, household, family, or agricultural purposes." Md. Code Ann., Com. Law § 13-101(d)(1); D.I. 6, at 19–20.

13

To determine whether a product would be used for those purposes, Maryland courts look to the buyer's intent. *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 635 (Md. Ct. App. 1995). If a buyer plans to use the product in his home, that product becomes a consumer good, even if other buyers would use it differently. *Id.*

Yet Garner never says how he planned to use the ionizer. True, his complaint suggests that some buyers might have installed an ionizer in their homes. Compl. ¶¶ 7, 43, 45. But he also notes that many buyers bought an ionizer for their businesses. *Id.* ¶¶ 144–45, 147, 152–55. And he does not clarify which camp he falls into, aside from a conclusory statement that he "is a consumer" and the ionizer is a consumer good. *Id.* ¶¶ 263–64; *see generally id.* ¶¶ 146, 148, 162–71.

So I must dismiss this claim. If Garner bought the ionizer for use in his home, he should amend his complaint to say so.

**E. Unjust enrichment**

That leaves Garner's claim that his purchase unjustly enriched Global Plasma. *Id.* ¶¶ 271–79. To state that claim, Garner must plead that Global Plasma "holds [his] money and that it would be unconscionable [for them] … to retain it." *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 569 (Md. Ct. Spec. App. 2007) (quoting *Plitt v. Greenberg,* 219 A.2d 237 (Md. 1966)).

He has not. Garner bought the ionizer from a third-party retailer and has not said whether the proceeds from that sale ended up in Global Plasma's hands. Compl. ¶ 162; D.I. 6, at 20–21. At most, he implies that Global Plasma made more money because retailers could sell its products. Compl. ¶¶ 275–79.

14

Yet that is not enough. True, Garner need not show "direct dealings" with Global Plasma to state a valid claim. *Gibbons*, 918 A.2d at 571–72. But he still must allege that Global Plasma got his money in the end. *Id.* at 572; *Newcomb v. Babu*, 2020 WL 5106714, at *5 (D. Md. Aug. 30, 2020) (asking whether the defendant had "funds transferred to it") (cleaned up). Vague implications do not suffice. So I will dismiss this claim too.

### IV. GARNER DOES NOT PLAUSIBLY PLEAD BREACHES OF WARRANTY

Along with his fraud-based claims, Garner brings several claims for breach of warranty. For these, he need only state enough facts to make his claim plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). But he fails.

Garner needed to plead that his notice "informed [Global Plasma] that there was a breach" and described the "nature of the nonconformity." *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011); *see* Md. Code Ann., Com. Law § 2-607(3)(a); *Palmer v. CVS Health*, 2019 WL 6529163, at *6 & n.17 (D. Md. Dec. 4, 2019). But he does not. He says only that he "sent pre-suit notice concerning the [ionizer's] defects." Compl. ¶¶ 171, 203, 219, 221, 252–53. And that conclusory statement is not enough. *Doll*, 814 F. Supp. 2d at 542 (rejecting the conclusory statement that plaintiffs had provided notice of "the problems they experienced"). *Id.*

Granted, Garner's brief discusses his notice. *See* D.I. 7-1, exh. K; D.I. 11, at 17–18. But I cannot consider that information because it is neither provided by nor integral to Garner's complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Garner should amend his complaint to include it.

15

Garner's final claim for violations of the Magnuson-Moss Warranty Act also fails. Compl. ¶¶ 223–38. As I recently explained, Magnuson-Moss permits class actions in federal court only where there are 100 named plaintiffs. *Talley v. General Motors*, No. 1:20-cv-01137, at 12–15 (D. Del. Nov. 26, 2021); *see* 15 U.S.C. § 2310(d)(3)(C). Because Garner is the sole plaintiff here, I cannot hear his claim.

\* \* \* \* \*

Garner identifies several potential misrepresentations. So he successfully states a fraudulent-misrepresentation claim. But his other claims are faulty, so I must dismiss them. If Garner wants to mend those flaws, he should amend.

16